**COPPOCK & TELTSCHIK and Lloyd M. Lunsford, Appellants,**

v.

**MAYOR, DAY & CALDWELL, Appellee.**

No. 01–92–00890–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 20, 1993.

Rehearing Denied July 15, 1993.

Lloyd M. Lunsford, South Houston, for appellants.

William E. Matthews, Lawrence J. Pirtle, Melanie McDonald, Sewell & Riggs, Houston, for appellee.

Before O'CONNOR, SAM BASS and DUGGAN, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked to determine if the probate court had jurisdiction in this case (yes), if the court erred in its order of severance (no), and if it erred in granting the summary judgment (no). We affirm.

### Fact summary

The case involves a debt of the Estate of D.C. Anderson (Estate) and the validity of a lien on the Vagabond Motel, the largest asset in the Estate. Upon Mr. Anderson's death, a probate action was filed to dispose of his property. The court appointed three separate groups of substitute administrators. Ms. Linda Anderson, his widow, was in the second group of administrators, and was replaced by Kenneth McLaughlin, Jr. (McLaughlin), a partner at Mayor, Day & Caldwell (MDC). Sometime later, Ms. Anderson filed a suit in district court against Mercury–Milam Savings Association (Mercury), a banking entity from which McLaughlin borrowed $1.1 million for the Estate, which was secured by a lien on the Vagabond Motel. We do not have any of the original pleadings from that suit in this record.

This appeal had its genesis when Lloyd M. Lunsford and the firm of Coppock & Teltschik (collectively, the Interpleader-lawyers) filed an interpleader action in Ms. Anderson's district court suit against Mercury.[1] The Interpleader-lawyers sued McLaughlin, a partner with MDC, who was the temporary administrator of the Estate, and MDC (collectively, the Estate lawyers), which represented the Estate during McLaughlin's appointment.

To simplify matters, we provide the following chronological list of events:

3–27–80 The probate court appointed two individuals as co-executors and co-trustees of the Estate.

7–15–83 The probate court decided the Vagabond Motel was property of the Estate and was not the homestead of Ms. Anderson.

10–2–84 The first two executors resigned; the probate court appointed Ms. Anderson and Larry Anderson as temporary administrators.

7–26–85 The probate court removed the Andersons and appointed McLaughlin, a partner with MDC, as temporary administrator.

9–3–85 The probate court approved McLaughlin's request for a $1.1 million loan, secured by a first lien on the Vagabond Motel, to repay creditors of the Estate. Mercury, also a client of MDC, was the lender.[2]

3–11–86 Ms. Anderson assigned the Interpleader-lawyers, who represented her during the administration of the Estate, 20 percent of all her interests in the Estate and 20 percent interest in her causes of action in the probate court suit.

3–12–86 The Interpleader-lawyers notified McLaughlin that Ms. Anderson assigned them a partial interest in the Estate and her causes of action.

1–23–87 McLaughlin filed the final account in probate court.

6–26–87 The probate court held two hearings and approved the final account. The court's order released and discharged McLaughlin from all liability in connection with the Estate.

Date unknown—Ms. Anderson filed suit in district court against Mercury.

2–15–89 The Interpleader-lawyers filed an interpleader action in Ms. Anderson's suit in district court, joining the Estate lawyers.

7–31–90 The temporary administrator of the Estate intervened in the district court suit and transferred it to the probate court.

5–1–92 The probate court granted MDC and McLaughlin's motions for summary judgment and severed their causes.

The Interpleader-lawyers pled the following causes of action against Mercury, McLaughlin, and MDC: (1) fraud; (2) slander of title; (3) tortious interference with contracts, assignments, and liens; and (4)

---

1. Another lawyer, Robert Hinton, participated in the suit but has not appealed.

2. Mercury was later acquired by the American Federal Bank.

civil conspiracy to convert the Interpleader-lawyers' property.

The Interpleader-lawyers claim an interest in the property upon which Mercury has a lien. They allege Mercury loaned money to the Estate and encumbered a major asset of the Estate, despite the fact McLaughlin and MDC knew of Ms. Anderson's homestead interest,[3] and the Interpleader-lawyers had liens that had attached to the property. The Interpleader-lawyers contend the loan reduced the value of the Estate and the money that would ultimately flow to Ms. Anderson, and through her assignment, to them.

This appeal challenges only the motion for summary judgment granted to MDC. The motion for summary judgment granted to McLaughlin was appealed and affirmed by this Court in an unpublished opinion issued November 18, 1992.

In its motion for summary judgment, MDC raised three affirmative defenses: standing, res judicata, and collateral estoppel. Additionally, it addressed each of the five causes raised by the plaintiffs: fraud, slander of title, tortious interference with contracts, assignments, and liens, tortious interference with inheritance, and civil conspiracy.

## 1. Jurisdiction

In their point of error one, the Interpleader-lawyers argue the probate court erred in granting summary judgment because it did not have subject matter jurisdiction of their suit. We disagree.

At the time suit was brought, section 5(d) of the Texas Probate Code provided, in pertinent part, "All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." Act of June 21, 1975, 64th Leg., R.S., ch. 701, § 2, 1975 Tex.Gen.Laws 2195, 2196 (amended 1989) (current version at TEX.PROB.CODE ANN. § 5(e) (Vernon Supp. 1993)).

Section 5A(b)[4] of the code defines matters "appertaining" and "incident" to an estate as including "all claims by and against an estate and generally all matters relating to the settlement, partition, and distribution of estates." *Bunnell v. Jordan*, 807 S.W.2d 1, 2 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Section 5A(b) further provides that "where the jurisdiction of a statutory probate court is concurrent with that of a district court, any cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court rather than in the district court."

In 1985, the Legislature amended the Texas Probate Code to broaden the jurisdiction of the statutory probate court. *Palmer v. Coble Wall Trust Co.*, 36 Tex.S.Ct.J. 120, 122 (October 31, 1992); *see also Pearson v. K–Mart Corp.*, 755 S.W.2d 217, 219 (Tex.App.—Houston [1st Dist.] 1988, no writ). The 1985 amendment adds the last sentence to section 5A, which provides "[i]n actions by or against a personal representative, the statutory probate courts have concurrent jurisdiction with the district court." TEX.PROB.CODE ANN. § 5A(b) (Vernon 1985). "Personal representative" includes "executor, independent executor, administrator, independent administrator, temporary administrator, guardian, and temporary guardian, together with their successors." TEX.PROB.CODE ANN. § 3(aa) (Vernon 1980). As attorneys for the Estate, MDC was not Ms. Anderson's personal representative.

Whether the probate court had jurisdiction over the suit in this instance turns on the nature and extent of the Interpleader-lawyers' right to sue MDC, the law firm that represented McLaughlin, the representative of the Estate. Here, each act about which the Interpleader-lawyers complain occurred when McLaughlin was acting in his capacity as temporary administrator of the Estate. In spite of this, the Interplead-

---

**3.** Ms. Anderson and Mercury are still awaiting resolution of the "homestead" question. This cause was severed from that litigation.

**4.** Act of June 15, 1985, 69th Leg., R.S., ch. 875, § 1, 1985 Tex.Gen.Laws 2995, 2996 (amended 1989) (current version at TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp.1993)). Hereinafter, references to section 5A(b) refer to this statute.

er-lawyers argue their suit is not "incident to the estate." We disagree.

In *Palmer*, the independent administrator of an estate sued the estate's former temporary administrator in statutory probate court for negligence, gross negligence, and violations of the Deceptive Trade Practices Act. 36 Tex.S.Ct.J.. at 120; Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987). The court of appeals reversed the judgment on the grounds the statutory probate court did not have subject matter jurisdiction over the suit. *Id.* The Texas Supreme Court reversed the court of appeals and held the statutory probate court did have subject matter jurisdiction over the suit. *Id.* at 123.

The Interpleader-lawyers assert causes of action that involve the disposition of a major asset of the Estate and challenge both the orders of the probate court and the acts of attorneys for the temporary administrator. Their complaints are directly related to the alleged wrongdoing of a temporary administrator. We hold the Interpleader-lawyers' suit is a matter incident to the estate. The probate court properly exercised its subject matter jurisdiction.

We overrule point of error one.

**2. Severance**

In point of error two, the Interpleader-lawyers argue the court below erred in its order severing MDC from all suits, claims, and other actions.

The trial court has broad discretion in the severance of cases under Tex.R.Civ.P. 41.[5] *Guaranty Fed. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990); *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 721 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The trial court's decision to grant a severance will not be reversed unless it has abused its discretion. *Guaranty Fed. Bank,* 793 S.W.2d at 658. A claim is properly severable if: (1) the controversy involves more

than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.* The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.* It is clear the reason for the severance was to make the summary judgment final and appealable.

On this record, we find no abuse of discretion. We overrule point of error two.

**3. Summary judgment review**

In point of error three, the Interpleader-lawyers argue the court below erred in granting summary judgment. They assert they pled the following causes of action: (1) fraud; (2) slander of title; (3) tortious interference with contracts; and (4) civil conspiracy to convert the Interpleader-lawyers' property.

When a defendant moves for summary judgment on the plaintiff's pleading, to obtain a summary judgment, the defendant need only negate one element of each cause of action raised by the plaintiff. Tex.R.Civ.P. 166a; *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991) (defendant moved for summary judgment on the ground that causation was negated as a matter of law); *Southwest Indus. Import & Export, Inc. v. Borneo Sumatra Trading Co.,* 666 S.W.2d 625, 627 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). When a defendant moves for summary judgment on its affirmative defense, the defendant must prove its defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984) (defendant moved for summary judgment because plaintiffs were estopped by acceptance of benefits of earlier judgment).

In the appeal of a summary judgment case, the appellate court is entitled to

---

5. Tex.R.Civ.P. 41 reads in relevant part:
[A]ctions which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just.

consider evidence favoring the movant's position when that evidence is uncontroverted. *Einhorn v. LaChance*, 823 S.W.2d 405, 410 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). A trial court may grant a summary judgment based on the uncontroverted evidence of an interested witness or expert witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986); TEX.R.CIV.P. 166a(c).

■ When the trial court states the express reasons for granting the summary judgment and does not address other grounds raised in the motion, we can only affirm if we find the stated reasons are correct. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied). We cannot affirm the summary judgment on any ground not expressly granted by the summary judgment. *Id.* [6]

MDC moved for summary judgment because the Interpleader-lawyers did not have standing and were statutorily barred from bringing a collateral attack on the probate court's orders. The trial court granted the motion for summary judgment against the Interpleader-lawyers because: (1) the Interpleader-lawyers were not in privity with MDC, and (2) any claims they may have had were barred by limitations. The court severed all suits, claims, and other actions asserted by the Interpleader-lawyers against MDC from the main suit.

We review the summary judgment evidence to determine whether MDC established its right to summary judgment as a matter of law.

### a. Standing

■ MDC argues in its brief that the Interpleader-lawyers have no standing to bring suit against it because the Interpleader-lawyers were not its clients and were not in privity with them. MDC contends that all the acts about which the Interpleader-lawyers complain were performed at the request of the administrator of the Estate and under the authority of court orders.

The Mercury loan to the Estate was approved by Ms. Anderson before it was made. When Mercury loaned the Estate $1.1 million, the Interpleader-lawyers had no interest in the Estate. Ms. Anderson did not assign the Interpleader-lawyers an interest in her share of the Estate and an interest in her causes of action in the probate court suit until after the loan was approved and executed. Thus, when she assigned the Interpleader-lawyers an interest in her interest, she assigned them an interest in what she had at the time of the assignment. The Interpleader-lawyers, as her assignees, stand in the same position as Ms. Anderson and can assert only the rights she had. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 720 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The Interpleader-lawyers, as Ms. Anderson's assignees, are subject to any defenses that could be asserted against her. *Id.* Having approved the loan, Ms. Anderson could not complain about it; neither can the Interpleader-lawyers, her assignees. The Interpleader-lawyers have no standing to challenge the propriety of the loan.

### b. Collateral estoppel

■ In its motion for summary judgment, MDC claimed the probate court's orders could not be collaterally attacked, as the Interpleader-lawyers attempt to do by their suit. In their suit, Interpleader-lawyers alleged MDC was paid "enormous fees" totalling $380,000. Each of the acts about which the Interpleader-lawyers complain were conducted under the authority of a probate court order—MDC was hired by court order, monthly fees to MDC were approved by court order, the $1.1 million loan was approved by court order, and McLaughlin's final account, recounting these acts, was approved by court order.

---

**6.** *But see Veytia v. Seiter,* 740 S.W.2d 64 (Tex. App.—San Antonio 1987), *aff'd,* 756 S.W.2d 303 (Tex.1988) (trial court specifically based its ruling on one ground, and the court of appeals affirmed after considering both the ground ruled upon and an independent ground).

The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in the earlier suit. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex.1992). Collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action. *Id.* at 802. It also precludes the relitigation of essential issues of law that were litigated and determined in the earlier action. *Id.*

In *Ball v. Ball's Estate*, 45 S.W. 605, 606 (Tex.Civ.App.—Dallas 1898, no writ), the Dallas Court of Appeals held a judgment approving the account of a temporary administrator and discharging him is a final judgment which can only be assailed in a direct proceeding for that purpose.

Section 31 provides the procedure for challenging the orders of the probate court:

Any person interested may, by a bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein; but no process or action under such decision, order or judgment shall be stayed except by writ of injunction, and no bill of review shall be filed after two years have elapsed from the date of such decision, order, or judgment. Persons non compos mentis and minors shall have two years after the removal of their respective disabilities within which to apply for a bill of review.

TEX.PROB.CODE ANN. § 31 (Vernon 1980).

The Interpleader-lawyers could attack the final account only through an appeal of the probate court's decision or by a bill of review. They have not done either. Instead, they have chosen a collateral attack, which is expressly forbidden.

#### c. Res judicata

In its motion for summary judgment, MDC claimed res judicata barred the Interpleader-lawyers' suit. Res judicata precludes a party from relitigating the same cause of action. *Gracia v. R.C. Cola—7–Up Bottling Co.*, 667 S.W.2d 517,

519 (Tex.1984). In *Getty Oil Co.*, the Texas Supreme Court stated:

[A] judgment in an earlier suit precludes a second action by the parties and their privies not only on matter actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.

845 S.W.2d at 798. The court went on to say factors to consider in determining whether facts constitute a single transaction are "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1990)). A second suit is barred if it arises out of the same subject matter of the earlier suit and could have been litigated in that suit. *Getty Oil*, 845 S.W.2d at 798. The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex.1992).

In *Bohlssen v. Bohlssen*, 56 S.W.2d 913, 916 (Tex.Civ.App.—Galveston 1932, no writ), we stated:

Since the question of the invalidity of the judgment of the probate court in discharging the guardian and her sureties, on the ground that such judgment was obtained by the fraud and misrepresentation of the guardian, cannot be inquired into in this suit, it follows that such judgment, having been rendered by a court of competent jurisdiction, and being in full force and effect, is res adjudicata of all the matters involved therein and determined thereby.

McLaughlin filed the final account for the Estate on January 23, 1987. The probate court approved it on June 26, 1987, and released McLaughlin. These orders were final, and if questioned, should have been attacked directly through an appeal or a bill of review proceeding in the probate court. *See Bohlssen*, 56 S.W.2d at 916.

### d. Plaintiffs' allegations

The Interpleader-lawyers raised four causes of action in the probate court: (1) fraud; (2) slander of title; (3) tortious interference with contract, assignment, or lien; and (4) civil conspiracy. MDC responded to each of these claims in its supplemental motion for summary judgment. Each will be addressed separately.

### Fraud

In the Interpleader-lawyers' petition, they stated that the loan was fraudulent, and was never meant to be repaid. In its motion for summary judgment, MDC claimed the Interpleader-lawyers have no standing to raise the issue of fraud in the loan transaction. Because we have already held that the Interpleader-lawyers have no standing to challenge the loan to the Estate, they cannot challenge the loan by pleading fraud against MDC.

### Slander of title

In the Interpleader-lawyers' petition, they stated that MDC slandered the title of the property. In its motion for summary judgment, MDC claimed the Interpleader-lawyers have no standing to raise the issue of slander of title.

■ A cause of action to recover damages for the failure to release a purported, though not actual, property interest is a cause of action for slander of title. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983). Purchasers of property are required to prove loss of a specific sale or sales in order to recover on their slander of title action. *Id.* In slander of title cases, the courts hold it is necessary to plead and prove a pending sale, which was defeated by the slander, as a prerequisite to recovery. *See A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex.1982).

■ There are two reasons we reject the Interpleader-lawyers contentions. First, because the Interpleader-lawyers had no standing to challenge the actions of MDC, they have no standing to complain about slander of title. Second, there is no allegation or evidence the Interpleader-law-

yers were defeated in a pending sale of the property; therefore, the summary judgment was proper as to the allegations of slander of title.

### Tortious interference with contract

■ In the Interpleader-lawyers' petition, they claimed MDC tortiously interfered with their contract "to deprive them of their just rights." In its supplemental motion for summary judgment, MDC stated the Interpleader-lawyers did not identify the contract with which Interpleader-lawyers claim it interfered. MDC guessed that the contract was either the one between the Interpleader-lawyers and Ms. Anderson or between Lunsford and Coppock & Teltschik, the Interpleader-lawyers. In a response filed to the supplemental motion for summary judgment, the Interpleader-lawyers did not identify the contract with which MDC interfered.

■ The statute of limitations for tortious interference with contractual relations is two years. *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex.1986). The Interpleader-lawyers filed their suit in February, 1989; Ms. Anderson assigned them an interest in her interest in the Estate in March of 1986, more than three years before. In none of their responses opposing the motion for summary judgment did the Interpleader-lawyers identify the contract with which they claimed MDC interfered or the date of the interference.

Because the Interpleader-lawyers did not raise a fact issue regarding the date of the tortious interference with contract, the summary judgment was proper as to the cause of action of tortious interference with contracts.

### Civil conspiracy

In the Interpleader-lawyers' petition, they stated MDC engaged in civil conspiracy "to convert assets of the Estate to their own use and benefit." In its supplemental motion for summary judgment, MDC claimed the Interpleader-lawyers did not plead a cause of action, and in any event, have no standing to raise the issue.

The Texas Supreme Court has defined a civil conspiracy "as a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968); *King v. Acker*, 725 S.W.2d 750, 755 (Tex. App.—Houston [1st Dist.] 1987, no writ). The statute of limitations for civil conspiracy is two years. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The gist of civil conspiracy is the wrong that injures another and not the conspiracy itself. *King*, 725 S.W.2d at 755. MDC alleged the "acts directed by the [probate] court cannot now be attacked in this forum as 'wrongful', and the 'foreclosure' which worries Lawyer–Plaintiffs so has not occurred."

There are two reasons we reject the Interpleader-lawyers contentions. First, the Interpleader-lawyers had no standing to challenge the actions of MDC with regard to its actions as lawyers for the Estate. Second, the statute of limitations ran as to their claim.

We overrule point of error three and affirm the judgment.