James C. HARTMANN, Hartmann–Mathisen Ranch Limited Partnership, James C. Tachias, Janice W. Wallace, and Testamentary Acquisitions, Inc., Appellants,

v.

Dayton SOLBRIG, Betty Solbrig Jordan, and Ruth Austin, Independent Executrix of the Estate of Leola Mathisen, Deceased, Appellees.

No. 04–99–00003–CV.

Court of Appeals of Texas, San Antonio.

Jan. 26, 2000.

---

Luther H. Soules, III, Soules & Wallace, P.C., San Antonio, Gerald Philip Urbach, Hiersche, Martens, Hayward, Drakeley & Urbach, P.C., Dallas, for Appellants.

George Brin, Brin & Brin, P.C., San Antonio, Gail Broden Tennant, Jr., San Antonio, Cecil W. Bain, Law Offices of Cecil W. Bain, P.C., San Antonio, J. Ken Nunley, Nunley, Davis, Jolley, Hill, Brant & Strieber, LLP, Boerne, David P. Stanush, Oppenheimer, Blend, Harrison & Tate, Inc., San Antonio, for Appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal of a judgment arising out of the administration of a probate estate in Gillespie County. The underlying litigation began as a will contest and evolved into several actions and cross-actions. Construction of a settlement agreement of the will contest and of a testamentary "request that James Hartmann have the right of first refusal" on a 689.64–acre tract resulted in a six-day bench trial. For the reasons stated below, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

### A. The Will

Leola Mathisen died at the age of 90 in 1994. A widow with no children, she left an estate valued at approximately $2,200,-000, the principle asset being her 1,000–acre ranch. Ten years before her death, Mathisen signed a new will, prepared by her attorney, in which she left a number of small bequests to friends and charities. She made a special bequest of a specific parcel of 329 acres to Ruth Austin, her caregiver and housekeeper. She granted a life estate in another specific 689.64–acre tract to her ranch foreman and his former wife, Dayton Solbrig and Betty Solbrig Jordan. The remainder interest in the 689.64 acres and in the residue of the estate was bequeathed to her niece and nephew, Janice Wallace and James Tachias, both of Dallas. Austin was named independent executrix in the will, with the corresponding power to sell, convey and/or partition the property and to pay all obligations of the estate. Of particular relevance to the issues presented here was the mention in the will of a right of first refusal, to wit: "In the event such 689.64 acres is offered for sale, it is my request that James Hartmann have the right of first refusal."

### B. The Guardianship Litigation

In 1991, Mathisen was adjudged incompetent and the county court appointed her nephew, Tachias, her guardian. In 1992, Tachias sold, with court approval, most of the 329–acre tract designated for Austin, to a third party named Ham for $529,-477.00, payable in three annual installments to the guardianship estate.[1] When Mathisen died in 1994, Austin, as named independent executrix and a beneficiary of the estate, attempted to probate the 1984 will. Tachias and Wallace, the residuary beneficiaries under the will, filed a will contest in the guardianship proceeding, alleging that Austin and others unduly influenced Mathisen, contesting Austin's application for letters testamentary and the bequests to Austin and the others so named. Solbrig and Jordan filed counterclaims asserting their rights to the life estates and for attorney fees. Austin also sued Tachias in district court for wrongful sale of the 329–acre tract. The court appointed Austin temporary independent administratrix of the estate.

After consulting with a tax attorney, the parties reached a settlement ultimately approved by the county and district courts in early 1995.[2] Under the terms of the settlement agreement, the guardianship es-

---

1. Appellees contend, and it is not controverted by appellants, that Tachias, the guardian, sold this property even though there was no need for funds in the estate. The effect of this sale during Mathisen's life (1) invalidated the specific bequest of that same tract to Ruth Austin as contemplated by Mathisen's will, and (2) increased the value of the resulting residuary estate, as bequeathed by the same will to Tachias and his sister. Tachias was in possession of the will at the time this transaction occurred. Austin did not learn of her status as named beneficiary and executrix until after the death of Mathisen.

2. The settlement agreement is dated November 1, 1994, but the signatures of the three principles were executed in Dallas and Bexar counties on January 7, 12, and 18, 1995.

tate and Tachias, as guardian, agreed to pay Austin, individually, $250,000.00, plus interest.[3] The remaining funds in the guardianship estate were transferred to the probate estate, and Austin was appointed independent executrix. Mutual releases were given, the will contest and Austin's suit in district court were dismissed, and the guardianship proceedings were closed. In the event the Internal Revenue Service disallowed a deduction for the payment on Austin's claim, she agreed to contribute proportionately with the other beneficiaries in paying the resulting federal estate tax. Tachias and Wallace also dismissed their undue influence claims against Solbrig and Jordan, whose counterclaim for fees remained pending.

## C. The Pipkin and Hartmann Offers

Marvin Pipkin, a San Antonio attorney representing Solbrig and Jordan in this matter, owns a ranch adjacent to the 689.64 acres encumbered by his clients' life estates. Pipkin's sworn affidavit stated:

> In an effort to resolve all current disputes and to allow a prompt, orderly and economical administration and distribution of the Estate without further delay, further expenses or a trial of outstanding issues, all such parties agreed that a sale would be made of a portion of the 689.64 acre tract sufficient to promptly pay the estate and inheritance taxes attributable to the 689.64 acre tract and to pay all other expenses and costs associated with such a sale and partition. After the A.C. Schwethelm & Associates, Inc. appraisal determining the value of the land at $1,300 per acre and the estate and inheritance tax amounts were determined, it was calculated that 123.7 acres would need to be sold.

Pipkin offered to purchase 123.7 acres adjacent to his ranch for the appraised value plus the sale costs. In addition, his offer provided that Pipkin would construct a new road to allow seller access to the westernmost portions of the remaining tract and a deer-proof partition fence. The parties intended to pay the taxes and outstanding bequests as quickly as possible and close the estate.

The Pipkin offer, dated February 21, 1995, was approved by Austin as executrix, Solbrig and Jordan as life tenants, and by Tachias and Wallace as remainder interest holders in the property. Prior to closing, however, the title company's co-owner and attorney, Carroll J. Bryla,[4] sent notice of the pending sale to James Hartmann, refusing to issue title insurance on this transaction unless Hartmann signed a waiver. Hartmann's attorney requested a copy of the Pipkin offer and subsequently asserted a "right of first refusal" by making several offers. Hartmann's attempts to match the Pipkin offer were unsuccessful because he was unable to obtain the consent of the other interested parties to dismiss pending litigation and to issue the title insurance. When none of the parties agreed on the meaning or effect of the testamentary request, the executrix filed a declaratory judgment action against James Hartmann on May 4, 1995.

## D. The Right of First Refusal Litigation and Other Maneuvers

Six months later, on November 20, 1995, Clinton Hartmann entered into several agreements designed to place Hartmann-controlled interests in the shoes of the remaindermen of the Mathisen Estate. An entity called Hartmann–Mathisen Ranch Limited Partnership (Hartmann–

---

**3.** The settlement payments were to be made in installments, with $240,000.00 denominated for Austin's individual claim, and $10,000.00 representing statutory fees as executrix. These payments resulted in and were funded in part by a corresponding deduction the probate estate took on its federal estate

tax return. The IRS later disallowed this deduction, creating a liability to the estate, which the IRS ultimately rescinded, reinstating the deduction.

**4.** Bryla also represented Wallace and Tachias in the probate proceedings.

Mathisen) was formed by Clinton, his brother, Paul Robert Hartmann, and their attorney, Charles Parrish,[5] with Hartmann Technology, Inc. as general partner. Hartmann–Mathisen then entered into an option agreement with Wallace and Tachias to purchase their remainder interest in the Mathisen Estate. The option contract provided that Hartmann–Mathisen had up to three years, dependent upon the life of the pending litigation, to purchase this interest for roughly $500,000. The exercise of the option was preconditioned on James Hartmann's waiver of a right of first refusal and a final resolution of Pipkin's attorney fee claim in the pending Solbrig–Jordan cross-action. James Hartman executed a covenant not to sue Wallace, Tachias, or their attorney, Bryla, "for tortious interference with Hartmann's rights and inheritance" granted in the Mathisen Will in connection with their participation in the Pipkin offer or the pending declaratory judgment action. On May 13, 1996, Hartmann–Mathisen intervened in the declaratory judgment action urging the district court to deny Austin's right to sell the 123.7 acre tract to Pipkin and named Austin, individually, and Gerald Schmidt, the estate's attorney, as third-party defendants in its claim to recover fees and costs.

Although the IRS had sent the estate a closing letter dated October 30, 1995, on September 19, 1996, Parrish, on behalf of his client James Hartmann, sent the IRS an application for a reward for original information. The cover letter indicated that Parrish had sent the IRS a copy of the original petition and settlement agreement concerning the guardianship proceedings and a copy of the estate's Schedule K showing a $240,000 deduction for the Austin claim. On March 10, 1998, Parrish sent another letter to the IRS denying that James Hartmann expected any compensation in connection with his report,

rather he intended to ensure that the property he may purchase from the estate not be subject to tax as a result of a disallowance of the deduction taken on Austin's claim. At trial, all parties acknowledged that an additional amount of federal estate tax was owed by the estate.

On February 3, 1997, Tachias and Wallace assigned their interest in the option contract to another Hartmann-controlled entity called Testamentary Acquisition, Inc., effectively selling all their current and future interest in the Mathisen Estate to Clinton Hartmann's company for $565,-000.00. The purchased remainders included the Ham note and its proceeds, subject to any payments which had been used to pay off the Austin claim against Tachias and the Mathisen Guardianship. The bill of sale also provided that while Hartmann would not challenge the validity or enforceability of the guardianship settlement, it was free to take issue with the manner in which Austin's guardianship claims were presented to the estate and the manner of handling these claims so long as he did not pursue such claims against Tachias and Wallace for any improper payment to Austin. Hartmann also softened his precondition on final resolution of Pipkin's fees as stated in the option agreement and agreed to hold Tachias and Wallace harmless on their share of all estate expenses. Tachias and Wallace agreed to testify for Hartmann in a fashion that would support the assertion that James Hartmann's offer to purchase the 123.7 acre tract matched all the material terms of the Pipkin offer and that they did not dispute Solbrig and Jordan's life estate claims other than their claim for Pipkin's attorney fees.

On February 20, 1997, Testamentary Acquisition, Inc. (TAI)[6] sued Austin, individually and in her capacities as temporary independent administratrix and independent executrix of the Mathisen Estate al-

---

5. On May 10, 1996, Parrish assigned his 37% interest in Hartmann–Mathisen Ranch Limited partnership to Clinton Hartmann.

6. We note that Charles Parrish represented TAI as well as the other Hartmann-related entities in this litigation.

leging breach of fiduciary duties to Tachias and Wallace, for negligence in her management of the estate, for fraudulent concealment, fraud, and misapplication of estate funds with regard to the estate's payment to Austin of $250,000 pursuant to the guardianship settlement.

On February 28, 1997, TIA also intervened in the declaratory judgment action, opposing the sale to Pipkin, and seeking a declaratory judgment that the Pipkin contract was void because Austin was not authorized to act on behalf of the estate at the time she entered into the contract, if authorized she exceeded her power to act, that Austin breached her fiduciary duty to James Hartmann, fraud, and failure of consideration. TAI also sought to join Pipkin and his wife as parties.

In September of 1997, TIA filed a motion to remove Austin as independent executrix for misapplying or embezzling property of the estate, failing to timely make an accounting of the estate, and for gross misconduct and mismanagement of her duties. The estate had earlier been placed in the hands of a receiver who made recommendations to the trial court. Austin continued to represent the estate in all the pending litigation.

## E. The Trial Court's Rulings

The parties waived a jury. On the eve of trial, the parties reached a Rule 11 agreement which settled some of the claims, narrowed the issues to be presented, and dropped as parties Solbrig, Jordan and the Pipkins.

On September 14, 1998, the trial court signed an amended final judgment *nunc pro tunc* which awarded Austin $10,000.00 on her breach of contract claim against Tachias and Jordan and $40,000.00 on her tortious interference claim against TAI. The court also found that Austin should remain as executrix of the estate, and together with the receiver, execute all documents necessary to effectuate the Rule 11 settlement agreement approved by the court. The court also awarded Austin attorney fees for the services provided by Bain, Stanush, and Nunley totaling $264,-170.10 to be paid by the estate, and to the extent these were not satisfied by the estate, then the fees were to be charged to TAI. The court also awarded Austin statutory fees totaling $25,622 and reimbursement of expenses of $11,264.17 from the estate for her services as executrix.

All claims pursued by TAI, James Hartmann, and Tachias and Wallace were denied, as were Austin's claims against Hartmann–Mathisen and James Hartmann. The trial court adopted the receiver's recommendation on the allocation of additional estate tax liability based upon a construction of the guardianship settlement agreement. James Hartmann and TAI appealed.

## ATTORNEY FEES

Appellants' first issue asserts error in the award of attorney fees and expenses to Austin. The court awarded fees and costs against the estate to Cecil W. Bain in the amount of $168,215.10, to David Stanush in the amount of $29,025.00, and to J. Ken Nunley in the amount of $66,930.00. The judgment specifically states that these awards are for "legal fees and expenses charged Ruth Austin as Independent Executrix." In the event the estate obligations under the will and to the IRS exceeded estate assets, the court directed that TAI would be liable for the fees and costs. Appellants argue that these fees were not necessary to pursue Austin's fiduciary duties to the estate because the litigation was aimed at defeating James Hartmann's testamentary right of first refusal and were incurred for Austin's personal benefit. Appellants' argument is based on an assumption that the will's reference to a right of first refusal is a mandatory right held by James Hartmann. In fact, the judgment contains no such finding on this issue.

■ There are clearly several statutory bases for awarding attorney fees to Austin

in this case. First, fees and costs were requested in the declaratory judgment actions concerning the construction of the will that ultimately were resolved by the judgment at issue. *See* Tex. Civ. Prac. & Rem.Code §§ 37.005, .009. The trial court has discretion to make such awards as are reasonable, necessary, equitable, and just. *See id.* at § 37.009; *Falls County v. Perkins,* 798 S.W.2d 868, 870 (Tex.App.-Fort Worth 1990, no writ). Secondly, the probate code also provides for attorney fees in will construction cases. *See* Tex. Probate Code § 242; *Humane Society of Austin v. Austin Nat'l Bank,* 531 S.W.2d 574 (Tex. 1977).[7] Thirdly, as the independent executrix, she was required to defend herself in a removal proceeding, an action which provides for the recovery of attorney fees, whether she was successful or not. *See* Tex. Probate Code § 149C; *Garcia v. Garcia,* 878 S.W.2d 678, 680 (Tex.App.-Corpus Christi 1994, no writ). Although appellants argue that all of Austin's and the estate's attorney fees were incurred for the sole purpose of benefitting or defending Austin individually, the evidence and the court's findings do not support this assertion. Although some of appellants' causes of action were filed against Austin, individually, the strategy behind the barrage of transactions and litigation was to pursue a collateral attack on court rulings concerning the Ham note proceeds. The trial court specifically found that necessary and reasonable fees were incurred in the preservation, safekeeping and management of the estate. The court further found that the participation of Austin, individually and in her representative capacity, in the litigation was in good faith and did not arise out of any alleged negligence, malfeasance, or self dealing.

We review an award of attorney fees under a sufficiency of the evidence standard. *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). As a general rule, the party seeking to recover attorney fees carries the burden of proof. *See id.* at 10. The trial court may award those fees that are "reasonable and necessary" for the prosecution of the suit. *Id.* In order to show the reasonableness and necessity of attorney fees, the plaintiff is required to show that the fees were incurred while suing the defendant on a claim which allows recovery of such fees. When a plaintiff seeks to recover attorney fees in cases where there are multiple defendants, and one or more of those defendants have made a settlement, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible. *Id.*

A recognized exception to this duty to segregate arises when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney fees may recover the entire amount covering all claims. *See Sterling,* 822 S.W.2d at 12; *Gill Sav. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989), modified, 797 S.W.2d 31 (Tex.1990) (remanded to the trial court for reexamination of attorney fee award). This is clearly a case where the litigation facts were inextricably intertwined. Moreover, the attorney-witnesses, on cross-examination, did make some effort to segregate fees for work they preformed for Austin individually,

---

**7.** Appellants characterize the declaratory judgment action filed by Austin seeking a will construction as a will contest "to defeat the Mathisen Will's provision as to the Hartmann right of first refusal."

and the court's award is less than the total fees put into evidence.

Appellants' reliance on *Tindall* is misplaced. In that case, the executor had failed to notify a named beneficiary of a specific bequest, and the fees incurred by the estate in a bill of review were held to be unnecessarily incurred by virtue of the executor's malfeasance. *See Tindall v. State*, 671 S.W.2d 691, 693 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.). In the case before us, the court heard evidence that the executor was advised by counsel that James Hartmann was not a beneficiary under the will. In addition, nothing in the court's findings of fact or in the judgment itself supports appellants' contention that the executor acted inappropriately in the performance of her duties as executrix.

Appellants also find the attorney fee award confusing because the same fees are awarded against the estate and against TAI. In reality, TAI has purchased the right to all residuary assets of the estate. The court intended one award, but directed Austin to collect first from the estate. If the assets are insufficient, then TAI is responsible for the award. Appellants' first issue is overruled.

### Tortious Interference

■■■■ In the second issue, TAI argues that the court's finding of tortious interference is legally insufficient. When reviewing the legal sufficiency of the evidence, we consider only evidence and inferences tending to support the jury findings, disregarding all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992). Challenges to the legal sufficiency of the evidence issues:

> must be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact;

(2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence established conclusively the opposite of a vital fact.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (citing Robert W. Calbert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *see also* W. Wendell Hall, *Standards of Review*, 29 St. Mary's L.J. 351, 477 (1998). Thus, if we find any evidence of probative force to support the jury's findings, the point must be overruled and the findings upheld.

■■■■ Appellants argue that Austin produced no actionable evidence that any of TAI's conduct constituted intentional and wilful interference with any contract or property rights, rather, TAI's only conduct, to participate in litigation, was absolutely privileged. This argument focuses on appellants' affirmative defense of legal justification. The trial court found that TAI's tortious interference with Austin's contractual right (to the settlement payments funded, in part, by the Ham note on the sale of 327 acres) "was without justification."[8] The leading case on legal justification states:

> A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. First, the record must be examined for evidence that supports the [fact finder's] finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law.

---

8. Appellants did request additional findings from the trial court which were not presented in substantially correct form, but rather constituted portions of evidentiary elements of privilege. Requested findings which merely relate to an evidentiary point are improper. *See Levine v. Maverick County*, 884 S.W.2d 790, 795 (Tex.App.-San Antonio 1994, writ denied).

*Victoria Bank & Trust v. Brady,* 811 S.W.2d 931, 939 (Tex.1991); *see also Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

Evidence of Austin's contractual rights are set forth in the guardianship settlement agreement whereby Tachias and Wallace agreed to pay Austin $250,000.00 plus interest through the transfer upon receipt of the Ham note proceeds from the guardianship estate to the probate estate. This evidence supports Austin's appointment as independent executrix, Austin's entitlement to statutory fees and reimbursement of expenses associated with her duties as executrix. It also covers an agreed allocation of contribution from Austin should there be a disallowance of the deduction to be taken in the estate tax return, and a release from any claims arising from events associated with this settlement. The agreement was filed with and approved by the court. TAI purchased the residuary rights in the estate with full knowledge of this prior agreement. In doing so, TAI stepped into the shoes of Tachias and Wallace and assumed an obligation to live up to the agreement. Instead of doing so, however, Tachias and Wallace breached the agreement with Austin by participating in a scheme with TIA to challenge the method of payment under the agreement.

Appellants' argument ignores the series of transactions they orchestrated on November 20, 1995, with full knowledge of the court-approved settlement agreement. The trial court correctly characterized this medley as TAI's attempt to create facts by which it could attack the method of funding payments to Austin in settlement of the guardianship litigation. Appellants never established any right to the proceeds of the Ham note by virtue of these agreements. That right had already been contracted away by Tachias and Wallace.

Appellants could demonstrate no colorable legal right to these proceeds. Therefore, their failure to demonstrate their own good faith in these proceedings precludes any finding as a matter of law that TAI was legally justified or excused for its tortious conduct. *See Brady,* 811 S.W.2d at 939.

In addition, the court heard evidence that James Hartmann had contacted the IRS seeking to instigate a review of the estate tax filing, after review of the return had closed, so that any additional tax assessment might place liability on Austin, Tachias, and Wallace. We find, as the trial court found, that the totality of the circumstances amply supports a finding of tortious interference without justification. Appellants' second issue is overruled.

### AUSTIN'S FAILURE TO FILE A CLAIM IN THE PROBATE ESTATE

In appellants' fifth issue, they complain that the trial court should have required Austin to remit to the probate estate all payments she received as a result of the guardianship settlement and then file a claim.[9] The claim had already been reviewed by the county court in the guardianship proceeding, where it was approved, and the guardian, Tachias, was authorized to sign the settlement agreement and pay out of estate bank accounts as necessary to satisfy the terms of the agreement. The district court also approved the agreement. The probate issues were first filed in the guardianship proceeding and that court clearly was exercising its authority to review the claim. The same court monitored both the guardianship and the probate proceedings in due course.

TAI, however, is estopped from complaining about the method of payment to Austin. *See Coppock v. Mayor, Day & Caldwell,* 857 S.W.2d 631 (Tex.App.-Hous-

---

9. The trial court did find that she had failed to file a verified executor's claim pursuant to section 317 of the probate code. The code further provides that a failure to do so within six months after the executor is qualified results in the claim being barred. *See* TEX. PROBATE CODE § 317.

ton [1st Dist.] 1993, writ denied). TAI was fully aware of the details of payment from its negotiations with Tachias and Wallace as reflected in its series of agreements to purchase the remainder interests. With full knowledge prior to purchasing this interest, TAI stood in the shoes of Tachias and Wallace, who had consented to the method of payment and obtained court approval to execute the agreement with its corresponding release from liability benefits. *See San Antonio Sav. v. Palmer*, 780 S.W.2d 803, 809 (Tex.App.-San Antonio 1989, writ denied)(acceptance of benefit from transaction with notice of facts and rights creates estoppel). At that time, Austin was not an executrix, but was the temporary independent administratrix of the probate estate. TAI fails to cite to any authority which would extend the requirements of section 317, as it existed in 1994, to a temporary independent administratrix.[10] Her claim was against the guardianship estate and the settlement of that dispute was approved by the residuary heirs, as well as the county and district courts, before she was ever appointed independent executrix, demonstrating extensive oversight by the interested parties and the courts. Appellants' fifth issue is overruled.

## Executrix Removal Action

 TAI litigated its claim to remove Austin as independent executrix on grounds that the inventory and list of claims was filed late, that funds were misapplied or embezzled,[11] gross mismanagement,[12] and that she was legally incapable of serving because of a conflict over her individual claim against the estate.

10. At oral argument, appellant's counsel again argued that the version of § 317 then in effect applied to independent executors, asserting that this court's 1933 opinion to the contrary was wrongly decided. *See Deane v. Driscoll*, 56 S.W.2d 503 (Tex.Civ.App.-San Antonio 1933, writ dismissed). The effort was not persuasive. There was no authority in conflict with *Deane* in 1933, and neither appellants nor this court have found any since

 The trial court has discretion to remove an independent executrix. The fact that an executrix also has a claim against the estate does not, by itself, render someone unsuitable for the position. *See Olguin v. Jungman*, 931 S.W.2d 607, 609 (Tex.App.-San Antonio 1996, no writ). There is evidence in the record of bona fide reasons for the delays of which TAI complains. The trial court found that Austin did not breach any contract or fiduciary duty, commit fraud, engage in any conspiracy, or tortiously interfere with James Hartmann's right of first refusal. We find no abuse of discretion on this matter and overrule appellants' fourth issue.

## Estate Tax Allocation

 In issue number eight, TAI contends the trial court failed to properly allocate the additional estate tax of $100,-430.00 which resulted from the IRS disallowance of the deduction taken for the guardianship settlement payments. The trial court ruled that Austin should contribute a pro rata share as had been agreed by all parties in the guardianship settlement agreement. TAI argues that this ruling is contrary to section 322A of the probate code, which TAI urges would require Austin to bear all of the tax deficiency.

TAI does not point to the particular portions of the tax allocation provision of the probate code to establish its argument or cite to any case authority to support it. TAI does state that under section 322A(m), however, the additional interest on the tax deficiency should have been allocated solely to Austin due to her negligence in causing the deficiency. There are

which would require that we overrule long-standing precedent.

11. TAI failed to cite to any evidence in the record supporting this allegation, and it is waived.

12. TAI failed to request a finding of fact or conclusion of law on this point, and it is waived.

no findings to support this conclusory argument.

The trial court heard testimony that all interested parties had consulted with their attorneys and a tax consultant before agreeing to take the deduction. In the event the deduction was disallowed, they had agreed to contribute a pro rata share to pay the deficiency. The court also heard testimony that the deficiency was triggered by the aggressive action of Hartmann's attorney who contacted the IRS directly at the same time in the probate proceedings he protested the receiver's continued defense of the deduction on behalf of the estate.

Finally, the property which formed the basis of the deduction was not part of the probate estate. This claim relates back to the 329 acres Tachias sold while acting as Mathisen's guardian, the claim was filed, prosecuted, and settled in connection with the guardianship estate. The disallowance was for contract payments made by the probate estate to fulfill the settlement agreement. The parties contracted in advance for this obligation and obtained court approval. TAI does not explain how section 322A applies to such a claim. Appellants' eighth issue is overruled.

Appellants' third, sixth, seventh, and ninth issues are deemed waived for failure to cite to any legal authority or any evidence in the record, as the case may be. *See* TEX.R.APP. P. 38.1(h). In addition, issue six is not argued. *See Templeton v. Dreiss,* 961 S.W.2d 645, 652 (Tex.App.-San Antonio 1998, pet. denied) (issues or subpoints not discussed in brief with support to record and authorities are waived).

The judgment of the trial court is affirmed.