**Opinion issued February 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00333-CV

————————————

## ANDREW WHALLON, DAHLIA GARCIA, AND RICHARD GRAYSHAW, Appellants

## V.

## THE CITY OF HOUSTON, Appellee

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-51588**

## O P I N I O N

This is an appeal from a judgment awarding demolition costs and attorneys' fees to the City of Houston from three property owners—appellants Andrew Whallon, Dalia Garcia, and Richard Grayshaw—for their proportional share of the total costs associated with demolition of a condominium complex. We reverse and

render the judgment against appellants Garcia and Grayshaw and affirm the judgment against appellant Whallon.

## BACKGROUND

At issue in this case is Candlelight Trails Condominium Complex. The complex became of particular interest to the Houston Police Department (HPD) because of the high volume of calls for assistance from, and related to, that complex. Specifically, the department's Differential Response Team (a division created to address high crime areas where traditional policing has been ineffective) was asked to focus on the complex in response to the approximately 800 calls the complex generated in 2007.

Since at least 2007, the units at the complex had been all open to the outside elements. At least 90 percent of the exterior windows and doors were either broken or removed, and all eight buildings were inundated with black mold. Every unit in the complex had been vandalized, and much of the wiring, plumbing, fixtures, and cabinets were torn out. There was also evidence of violent struggles in units that were splattered in blood. By 2007, only 34 of the 230 units still had occupants through ownership or rental agreements.

The complex is bordered by an apartment complex, a church, and a retirement home. It also is down the street from a playground, and HPD

considered the complex to be an attractive nuisance to kids. None of the units were habitable, and the building conditions violated numerous city ordinances.

**A. The Building and Standards Commission proceedings**

On August 7, 2007, in response to a health and safety evaluation, the City of Houston posted notices to vacate at the complex and began making efforts to relocate anyone who was still living there. On August 15, 2007, the City's Neighborhood Protection Division initiated a hearing related to the property before the Building and Standards Commission. At that meeting, Mr. Fonteno, the owner of the majority of the condominium units, volunteered to take on the responsibility of boarding the property and securing the perimeter. The measures Fonteno took were short-lived, however, and the Neighborhood Protection Department eventually hired a contractor to secure the complex.

On November 7, 2007, the Building and Standards Commission held a public hearing pursuant to Section 54, Subchapter C of the Texas Local Government Code and Chapter 10 of the Code of Ordinances, Houston, Texas. The Commission found that the complex was dangerous and substandard in violation of Houston's Municipal Code of Ordinances.

Following the hearing, the Commission ordered the owners and lien holders of units in Candlelight Trails to bring the property into compliance with the Code of Ordinances within 60 days. The Commission's orders also provided,

3

UPON THE EARLIEST DATE OF ANY FAILURE BY THE OWNERS OR LIENHOLDERS TO TIMELY COMPLY WITH THIS ORDER, THE CITY OF HOUSTON SHALL BE AUTHORIZED TO REMEDY, ALLEVIATE, OR REMOVE ANY SUBSTANDARD OR DANGEROUS BUILDING IN ACCORDANCE WITH SECTIONS 10-351 AND 10-370 OF THE CITY'S CODE OF ORDINANCES[.] PURSUANT TO SECTIONS 10-351 AND 10-395 OF THE CITY'S CODE OF ORDINANCES A PRIVILEGED LIEN, INFERIOR ONLY TO TAX LIENS AND LIENS FOR STREET IMPROVEMENTS, MAY BE PLACED UPON THE LAND DESCRIBED HEREIN, PLUS TEN PERCENT (10%) INTEREST PER ANNUM UNTIL PAID.

## B. The Underlying Bench Trial

Almost a year later, on August 27, 2008, the City of Houston sued, in Harris County district court, the owners and lienholders of one of the condo buildings seeking demolition of that building or, in the alternative, judgment authorizing the City to demolish the building, as well as recovery of demolition costs. The City later amended its petition, seeking permission to demolish the entire complex, demolition costs apportioned to each owner, liens against the underlying property apportioned to each owner for demolition costs, and attorney's fees. Later, on April 21, 2009, the City issued Notices of Statutory Municipal Liens against the owners and lienholders of the complex pursuant to Chapters 54 and 214 of the Texas Local Government Code and Chapter 10 of the Code of Local Ordinances. Appellant/defendant Andrew Whallon, who owned fourteen units in the complex, cross-claimed against the homeowners' association, Candlelight Trails 1 Association. The trial court appointed an ad litem to represent some property

4

owners who could not be located. In the two years between the City's initially filing suit and the time of the bench trial, the court signed numerous interlocutory summary judgments and default judgments against various condominium owners.

By the time of the bench trial on September 2010, none of the necessary repairs had been completed by the complex owners, and the City had been unsuccessful in its attempts to keep the property secure. One of the eight complex buildings was completely destroyed by fire one month before trial.

Whallon was the only defendant who participated at trial. The court heard evidence about the condition of the buildings and expert testimony estimating the cost of demolition to be $455,000.00, and the amount of the City's reasonable and necessary attorneys' fees to be $607,504.77.

At the close of trial, Whallon agreed to the trial court's signing an immediate demolition order, given the hazardous condition of the buildings. At Whallon's request, his cross-claim against the homeowners' association was severed to be tried at a later date.

### C. The Trial Court's Judgments and Findings of Fact and Conclusions of Law

On September 14, 2010, the trial court signed an interlocutory Order Regarding Demolition authorizing the City to demolish the buildings in the complex. On December 1, 2010, the trial court entered a final judgment in the City's favor. The judgment contained recitations identifying which of the 141

original defendants had been dismissed by the City pursuant to settlements or been the subject of interlocutory default and summary judgments. The judgment also recited that the City would incur demolition costs of $455,000.00 and that the City had incurred reasonable and necessary attorneys' fees of $494,751.00. It awarded to the City these demolition costs and attorneys' fees "against the Owner Defendants remaining in this case in proportion to their respective fractional interests in the Complex."

As for the appellants here, the final judgment awarded damages of $41,314.00 from appellant Whallon to the City. There was no award from appellants Grayshaw and Garcia, as they were identified in the judgment as being either parties that had settled or parties with whom the City has "been in the process of settlement and dismissal during and following trial, and up to the time of this Judgment."

On December 30, 2010, the City filed a Motion to Modify Final Judgment, in part because three property owners, including appellants Grayshaw and Garcia, "who had indicated their intention to settle at the time the City submitted the Final Judgment have failed or refused to complete the settlement process." On January 21, 2011, the trial court signed a Corrected Final Judgment, which included awards against appellant Grayshaw for $5,129.00 and against appellant Garcia for $3,894.00.

At appellants' request, the trial court issued Findings of Fact and Conclusions of Law in Support of Corrected Judgment in March 2011.

## ISSUES ON APPEAL

Appellant Andrew Whallon raises the following issues:

(1)    "Did the trial court have jurisdiction to enter its corrected final judgment on 01-21-2011?"

(2)    "Did the trial court err in refusing to strike plaintiff's untimely designated experts, their documents and their related findings?"

(3)    "Did the trial court err in awarding attorneys' fees and expenses in the total amount of $494,751.00 and as apportioned between and amount defendants in the amounts set forth in the corrected final judgment?"

(4)    "Did the trial court err in awarding $455,000.00 in demolition costs, in total and as apportioned between and among defendants in the amounts set forth in the corrected final judgment?"

(5)    "Did the trial court err in entering any and all of its findings of fact/conclusions of law in support of its corrected final judgment,

    a.    "because the trial court lacked or lost jurisdiction over the entire proceedings?; and/or"

    b.    "because, as to those specific FOF/COL set forth below, the trial court committed an error in the admission of the allegedly supporting evidence upon which it, in whole or in part, based its FOF/COL and ultimately its corrected final judgment?; and/or"

    c.    "because there was no properly admissible and/or admitted evidence which supported said FOF/COL?; and/or"

    d.    "because contrary finding(s) and/or conclusion(s) were established as a matter of law?"

Appellants Dalia Garcia and Richard Grayshaw raise the following issues:

(1) "Did the trial court have jurisdiction to enter its corrected final judgment?"

(2) "Did the trial court err in awarding attorneys fees and expenses in the total amount of $494,751.00, and as combined then apportioned against defendants/appellants in the amounts set forth in the corrected final judgment?"

(3) "Did the trial court err in awarding $455,000.00 in demolition costs, in total and as combined then apportioned against defendants/appellants in the amounts set forth in the corrected final judgment?"

(4) "Did the trial court err by entering its corrected final judgment so as to include the COH's claims against settling defendants/appellants Dalia Garcia and Richard Grayshaw?"

(5) "Did the trial court err in entering its corrected final judgment and any and/or all of its findings of fact and/or conclusions of law against settling defendants Dalia Garcia and Richard Grayshaw as support therefore?:

   a. "because the trial court lacked (or lost) jurisdiction over these defendants/appellants as well as over the entire proceedings no later than 9/10/2010"

   b. "because, as to certain specific FOF/COL set forth herein, the trial court committed an error in law in its admission of evidence necessary to support, in whole or in part, those FOF/COL and ultimately its corrected final judgment"

## RES JUDICATA

In Whallon's first issue and in Garcia and Grayshaw's first issue, appellants argue that the district court did not have subject matter jurisdiction because no property owner appealed the Commission's November 2007 orders. Specifically, appellants contend that the Commission's orders became "final and binding" on December 7, 2007 and, as such, "jurisdiction never passed to the 270th District

8

Court." Accordingly, they contend, the City could not "re-litigate the proceeding or otherwise disturb" the Commission's judgments. Although the City "chose not to seek all possible relief in that initial action," appellants argue that "under the doctrine of *res judicata*, the Order became final and binding" on both matters that "were and/or could have been at issue."

### A. Res Judicata does not implicate Subject-Matter Jurisdiction.

As a threshold matter, we note that appellants' argument conflates the separate and distinct concepts of res judicata and subject-matter jurisdiction.

Subject matter jurisdiction is "essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A court acting without such power commits fundamental error that we may review for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Not only may a reviewing court assess jurisdiction for the first time on appeal, but all courts bear the affirmative obligation "to ascertain that subject matter jurisdiction exists regardless of whether the parties questioned it." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010). A judgment rendered without subject matter jurisdiction cannot be considered final. *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (citing Restatement (Second) of Judgments § 12 cmt.b (1982)). Subject matter jurisdiction presents a question of

9

law we review de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

In contrast, res judicata is an affirmative defense that must be pleaded. Tᴇx. R. Cɪv. P. 94; *Barnes v. United Parcel Serv., Inc.*, 395 S.W.3d 165, 173 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). As such, unlike subject-matter jurisdiction, res judicata is subject to waiver. *E.g., Green v. Parrack*, 974 S.W.2d 200, 202 (Tex. App.—San Antonio 1998, no pet.) ("Generally, res judicata must be pled or be waived"); *Green v. Doakes*, 593 S.W.2d 762, 764 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) ("If the facts had given rise to a plea of res judicata, appellant has waived such by failing to affirmatively plead this defense in accordance with Rule 94, T.R.C.P.").

Here, the affirmative defense of res judicata was neither pleaded nor raised in the trial court. Because it was waived at the trial court, it may not be raised for the first time on appeal.

### B. Res Judicata did not bar the City from pursuing claims to recover demolition costs and attorneys' fees in the trial court.

In any event, the City's trial-court claims were not barred by res judicata.

### 1. Standard of Review

Under Texas law, "[r]es judicata is a generic term for the related concepts of claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Barnes*, 395 S.W.3d at 173. "Res judicata bars the relitigiation of claims that have been

finally adjudicated or that could have been litigated in the prior action." *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d 78, 86 (Tex. 2008). For res judicata to apply, the defendant must show that: (1) there is a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on claims that were or could have been raised in the first action. *Id.*; *Dardari v. Tex. Commerce Bank Nat'l Ass'n*, 961 S.W.2d 466, 470 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Res judicata does not operate as a bar to litigation when the second claim could not have been raised in the previous litigation. *See Abbott Labs. v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971); *Voskamp v. Arnoldy*, 749 S.W.2d 113, 126 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

"The doctrine of res judicata also applies to the relitigation of claims previously determined by an administrative agency." *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also, e.g.*, *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n of Tex.*, 798 S.W.2d 560, 563, 565 (Tex. 1990) (applying res judicata to a Public Utilities Commission ruling); *Harrison v. Gemdrill Int'l, Inc.*, 981 S.W.2d 714, 718 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (applying res judicata to a Texas Employment Commission ruling).

Here, appellants do not argue that the City is seeking to relitigate what was actually litigated before the Building and Standards Commission. Rather, they argue that the City should have sought demolition costs and attorneys' fees in the Commission proceeding. Because it did not, appellants argue that the City was barred from seeking damages in the district court.

## 2. Relevant Ordinances and Statutes

Sections of the Houston Municipal Code of Ordinances that regulate building safety, seizure, and removal are authorized under the authority of Chapter 214 of the Texas Local Government Code. *E.g.*, TEX. LOC. GOV'T CODE ANN §§ 214.001(a) ("A municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building . . ."); 214.0011(a) (authorizing municipalities to enact ordinances establishing "minimum standards for the use and occupancy of buildings" and authorizing municipality to secure buildings if standards are not satisfied), & 214.002(b) ("The governing body shall provide by ordinance for . . . assessment of repair, removal or demolition expenses incurred" by municipality.).

Chapter 54—entitled "Enforcement of Municipal Ordinances"—grants municipalities the authority to enforce ordinances and defines the scope of this authority. TEX. LOC. GOV'T CODE ANN. § 54.001. Chapter 54 also contains two distinct subchapters with provisions allowing municipalities to bring suit either

before a civil trial court (Subchapter B) or a Building and Standards Commission (Subchapter C). TEX. LOC. GOV'T CODE ANN. §§ 54.012–.019 & 54.031–.043 (Vernon 2008 & Supp. 2013). These two subchapters provide alternative methods through which a municipality may seek to enforce ordinances passed under the authority of Chapter 214 (Sections 214.001, 214.0011(a), & 214.002(b)). *See Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 381 (Tex. App.— Fort Worth 2002, pet denied):

> The legislature has . . . made it clear there is a difference between civil actions to enforce ordinances and quasi-judicial enforcement through a building standards commission. The provisions governing those two types of enforcement are located in separate and distinct subchapters of chapter 54. Thus, the City's Minimum Building Standards Code and chapter 54 make it clear that BSC review is not the same as a chapter 54 civil action.

*Id*. (internal citations omitted).

Chapter 214 additionally outlines the administrative procedures through which a municipality may enforce ordinances or acquire a demolition order. *Id*. at § 214.001; s*ee also Martinez v. City of Forth Worth Historic & Cultural Landmarks Comm'n*, No. 02-08-00433-CV, 2009 WL 1372974, at *1 (Tex. App.—Fort Worth May 14, 2009, pet. denied) (mem. op.).

### 3. Remedies available in Building and Standards Commission Proceeding

The City's Building and Standards Commission was created under the authority of Subchapter C. TEX. LOC. GOV'T CODE ANN. §§ 54.031 & 54.033. The

13

permissible functions of a building and standards commission are defined by statute, and—at the times relevant to the underlying proceedings—included the authority to:

(1) order the repair, within a fixed period, of buildings found to be in violation of an ordinance;

(2) declare a building substandard in accordance with the powers granted by this subchapter;

(3) order, in an appropriate case, the immediate removal of persons or property found on private property, enter on private property to secure the removal if it is determined that conditions exist on the property that constitute a violate of an ordinance, and order action to be taken as necessary to remedy, alleviate, or remove any substandard building found to exist;

(4) issue orders or directives to any peace officer of the state, including a sheriff or constable or the chief of police of the municipality, to enforce and carry out the lawful orders or directives of the commission panel;

(5) determine the amount and duration of the civil penalty the municipality may recover as proved by Section 54.017.

TEX. LOC. GOV'T CODE ANN. §§ 54.036; *see also* HOUSTON CODE § 10-394.

A person aggrieved by the commission's decision may file a verified petition in district court on the ground that the commission's decision was illegal. TEX. LOC. GOV'T CODE ANN. § 54.039. The commission panel decision is final if not appealed. LOC. GOV'T CODE ANN. § 54.041. Proceedings before the Building and Standards Commission are "cumulative of all other available remedies." HOUSTON CODE § 10-397.

### 4. Remedies available in district court

Subchapter B, governing civil district court actions, also permits ordinances to be enforced through a civil court action:

> A municipality may bring a civil action for the enforcement of ordinances: (1) for the preservation of public safety, relating to the materials or methods used to construct a building or other structure or improvement, including foundation, structural elements, electrical wiring or apparatus, plumbing fixtures, entrances, or exits; . . . . (6) relating to dangerously damaged or deteriorated structures or improvements; (7) relating to conditions caused by accumulations of refuse, vegetation, or other matter that creates breeding and living places for insects and rodents . . . .

TEX. LOC. GOV'T CODE ANN. § 54.012 (Vernon Supp. 2013). In addition to civil penalties, a municipality may seek, as a remedy, to "compel the repair or demolition of a structure or to obtain approval to remove the structure *and recover removal costs*." TEX. LOC. GOV'T CODE ANN. § 54.018(a). Section 214.0015 allows the trial court to award attorneys' fees to the prevailing party "in any judicial proceeding regarding enforcement of municipal rights" under that section. TEX. LOC. GOV'T CODE ANN. § 214.0015(h).

### C. Analysis

Appellants argue that the City was barred from bringing an action in district court because it first initiated proceedings before the Building and Standards Commission. Specifically, according to appellants, the City "brought all its claims to final resolution" before the commission, which barred the City from "re-

15

litigat[ing] the nuisance and remedy issues in the District Court" absent an appeal of the commission's orders.  The City disagrees, and further argues that all the cases cited by appellants are simply inapposite.

We agree with the City that appellants have not demonstrated that res judicata barred the underlying proceeding in district court.  The jurisdiction of administrative agencies is established by the legislature. *Igal*, 250 S.W.3d at 83. An administrative agency may only exercise powers conferred upon them by "clear and express statutory language."  *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).  Appellants' res judicata arguments rest entirely on the erroneous premise that the City could have sought and obtained an award of demolition costs and most of its attorneys' fees in a proceeding before the commission.  But appellants do not cite authority for that proposition, and our own research has not found support for it in the Texas Local Government Code, in the relevant ordinances, or in the case law.

The commission's November 7, 2007 orders gave Candlelight Trails property owners and lienholders 60 days to bring the complex into compliance with the relevant ordinances.  The orders further provided that, if this mandate were not timely complied with, the City was authorized to demolish the complex and place a lien on the complex's land.  After the owners failed to comply, the City sued in district court seeking demolition costs and attorney's fees.

Both the Texas Local Government Code and the Houston City Ordinance authorize the commission to order repairs, order that property be vacated, and order that property be demolished. They also both authorize liens against the real property and civil penalties in commission proceedings, but neither authorizes an award of demolition costs or attorneys' fees. Accordingly, appellants cannot demonstrate, through reference to statutory authority, that recovery of demolition costs and attorneys' fees was relief that the City could have, but did not, seek before the commission for purposes of res judicata.

Further, none of the cases appellants cite involving administrative proceedings support the proposition that the ordinance enforcement remedies available before the commission and district court are mutually exclusive. Appellants cite *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006) and *City of Dallas v. Stewart*, 361 S.W.3d 562, 580 (Tex. 2012) for the proposition that, if no appeal is taken, an agency decision is final and binding in all regards and cannot be collaterally attacked. But the City's pursuing a civil action in district court is not "appeal" of any order related to the administrative proceeding. *Compare* TEX. LOC. GOV'T CODE § 54.012-.013 (authorizing civil court action to enforce ordinances in district court) *with* TEX. LOC. GOV'T CODE §§ 54.039, 214.0012 (providing for appeals to district court of administrative decision enforcing

17

ordinances). Appellants have not established that the commission proceedings operate as res judicata to bar the underlying civil proceedings in district court.

We overrule Whallon's first issue and Garcia and Grayshaw's first issue.

## JUDGMENT AGAINST GARCIA AND GRAYSHAW

In their fourth issue, Garcia and Grayshaw argue that the trial court erred in entering judgment against them because "1. Garcia and Grashaw both entered into Rule 11 settlements with the [City] before trial; 2. The Court had signed interlocutory agreed judgments based on the settlements after trial; 3. Garcia and Grayshaw did not participate in trial based on the settlement; and 4. Neither pleadings nor evidence supported the [City's] bare assertion that [Garcia and Grayshaw] breached their settlements."

The City contends that this issue was waived by failure to cite the record and that, in any event, "Garcia's and Grayshaw's inchoate attempts to settle did not result in binding contracts, so jurisdiction remained."

### A. Evidence related to Settlements

The record contains the following related to settlements between the City and Garcia and Grayshaw:

### 1. Rule 11 Agreements

The following is the complete text of a September 3, 2010 letter agreement between Garcia's counsel the City's counsel:

18

This Letter Agreement confirms the agreement between your client, Dalia Garcia ("Garcia"), and the City of Houston (the "City") for the disposition of the Litigation. Garcia and the City (each, a "Party"' and collectively, the "Parties"') have agreed as follows:

1.  No later than the close of business on September 8, 2010, you will cause to be delivered to the undersigned counsel an Agreed Interlocutory Judgment (the "Interlocutory Judgment") executed by you on behalf of Garcia. The substance of the Interlocutory Judgment will not vary from the form attached to this Letter Agreement as Exhibit "A." The undersigned counsel will execute the Interlocutory Judgment on behalf of the City, promptly provide a copy of the said document to you, and file the original of the said document with the Court no later than September 9, 2010.

2.  No later than the close of business on September 20, 2010, the Parties will execute a written agreement of settlement and mutual release (the "formal settlement agreement") in a form approved by the Parties' respective counsel, which approval may not be withheld unreasonably. Whether or not the Parties execute a formal settlement agreement, this Letter Agreement constitutes a release by each Party of all claims and causes of action that each Party has asserted or could have asserted against the other Party in the Litigation, save and except only those obligations created by or resulting from this Letter Agreement, which obligations, in any event, continue until discharged or modified by a subsequent, mutual agreement of the Parties.

3.  No later than the close of business on September 30, 2010, Garcia will execute or cause to be executed all documents reasonable and necessary to convey to the City all of Garcia's rights title, and interest in the Candlelight Trails condominium complex, which is located in the 5500 and 5600 blocks of De Soto Street in Houston, Harris County, Texas, and is described in the Exhibit "2" attached to the Plaintiffs Fourth Amended Petition filed in the Litigation.

4. Each Party agrees to cause to be executed and delivered to the other Party additional documents as reasonably may be required to carry out the intentions of this Letter Agreement.

Please confirm the above terms by countersigning this Letter Agreement and faxing the letter back to me for filing with the Court pursuant to Rule 11 of the Texas Rules of Civil Procedure.

This Rule 11 agreement is signed by both the City Attorney and Garcia's attorney. It has a September 10, 2010 facsimile stamp across the top of the page. It also has a file stamp indicating it was filed with the trial court on September 10, 2010.

The record also contains a September 3, 2010 Rule 11 letter agreement between the City's counsel and Grayson. It is the same typewritten Rule 11 agreement quoted above with the following handwritten alterations: (1) Garcia's counsel's contact information is crossed out and replaced with Grayshaw's name, (2) Garcia's name is crossed out throughout the agreement and replaced with Grayshaw's name, and (3) the date for Grayshaw to return the executed Agreed Interlocutory Judgment to the City's counsel is changed from September 8, 2010 to September 15, 2010.[1]

---

[1] Despite providing a later date for Grayshaw to return the Agreed Interlocutory Judgment, i.e., September 15, 2010, the September 9, 2010 date by which the City represented it would file the executed Agreed Interlocutory Judgment with the trial court was not correspondingly changed.

This Rule 11 agreement is signed by both the City Attorney and by Grayshaw. It has a file stamp indicating it was filed with the trial court on September 10, 2010.

## 2. Agreed Interlocutory Judgments

There is an Agreed Interlocutory Judgment, signed by the trial court on September 15, 2010, stating, in its entirety:

> ON THIS DAY came on for consideration the captioned cause, in which the City of Houston is the Plaintiff and Dalia Garcia, is one of the Defendants. The City seeks a judgment from this Court authorizing the demolition of all structures on the premises of the Candlelight Trails condominium complex (the "Premises") located in the 5500 and 5600 blocks of De Soto Street in Houston, Harris County, Texas, and described more particularly in the Exhibit "2" attached to the Plaintiffs Fourth Amended Petition filed in this cause. The City and Dalia Garcia announced to the Court that all matters in controversy between them have been resolved, and those parties only have asked the Court to enter this Agreed Interlocutory Judgment. The Court, having considered the agreement of the parties as evidenced by the signatures of counsel below, is of the opinion that this Agreed Interlocutory Judgment should be entered as requested.

> Accordingly, it is

> ORDERED that, insofar as the legal and any equitable interests of Dalia. Garcia, are concerned, the City may demolish and remove all structures and personality on the Premises, at such time and in such manner as the City deems reasonable. lt is further

> ORDERED that the Interlocutory Default Judgment previously rendered in this case against Dalia Garcia is set aside. It is further

> ORDERED that each party shall bear its own costs. It is further

> ORDERED that all relief not granted herein is DENIED. It is further

21

ORDERED that this Agreed Interlocutory Judgment shall be finalized in accord with the Final Judgment to be entered in this cause.

This agreed judgment is signed by both the City Attorney and Garcia's attorney under notation, "AGREED AND ENTRY REQUESTED."

The record also contains a substantively identical Agreed Interlocutory Judgment disposing of claims between the City and Grayshaw. It is signed by both the City Attorney and Grayshaw. It was signed by the trial court on September 16, 2010.

### 3. The Corrected Final Judgment

The trial court's final judgment, signed December 1, 2010, identified Garcia and Grayshaw (along with numerous other defendants) as "hav[ing] been in the process of settlement and dismissal during and following trial, and up to the time of this Judgment." On December 30, 2010, the City filed a Motion to Modify Final Judgment requesting that (1) the judgment delete recovery against two defendants who settled post-judgment, and (2) the new judgment be entered granting monetary relief against three defendants—Garcia, Grayshaw, and a third—because they "had indicated their intention to settle at the time the City submitted the Final Judgment [but] have failed or refused to complete the settlement process." In support, the City's attorney filed an affidavit verifying that this quoted sentence is "true and correct" based on his personal knowledge.

22

On January 21, 2011, the trial court granted the City's motion and entered a Corrected Final Judgment. That judgment identified Garcia as one of the parties "against whom Interlocutory Default Judgment" was previously signed because she, "having been duly served, did not file an answer, did not make any pretrial appearance, did not appear at trial, and [has] wholly made default." The corrected judgment awarded the City $3,894.00 from Garcia, representing her proportional share of demolition costs and attorneys' fees.

The corrected judgment identified Grayshaw as one of the parties "who filed answers or appearances but did not appear at trial," and who had an interlocutory summary judgment previously granted against him. The corrected judgment awarded the City $5,129.00 from Grayshaw, representing his proportional share of demolition costs and attorneys' fees.

## B. Analysis

The City contends that "the record does not support" Garcia and Grayshaw's claim that they settled with the City. Rather, according to the City, "[a]lthough they were engaged in an exchange of purposed settlement documents with [the City], neither Garcia nor Grayshaw completed the process to form a binding contract." It asserts that there is a lack of record evidence that Garcia and Grayshaw accepted the City's offers to settle in strict compliance with their terms, such that no binding agreement was reached.

23

### 1. Applicable Law

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, no agreement between the parties or their attorneys shall be enforceable unless the agreement is either (1) in writing, signed by the parties, and filed with the papers as part of the record or (2) made orally in open court and entered as part of the record. "Rule 11 aims to eradicate the misunderstandings and controversies commonly associated with verbal agreements among parties and counsel." *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)). "Agreements in writing and filed with the court allow the writings to speak for themselves so that the court can judge of their import, and proceed to act upon them with safety." *Id*.

"Where a settlement offer prescribes a specific deadline for acceptance, that deadline must be met in order to create a binding settlement agreement." *In re Robison*, 335 S.W.3d 776, 783 (Tex. App.—Amarillo 2011, orig. proceeding). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

An agreed judgment has the same effect as any court judgment. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000) (citing *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956)). When a judgment is

rendered by consent it has neither less nor greater force or effect than it would have had it been rendered after litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties. *Id.* An agreed judgment should be construed in the same manner as a contract. *Id.* (citing *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519–20 (Tex.1984)).

## 2. Garcia

The City contends that it can be inferred from the record that Garcia may or may not have timely accepted its offer of settlement. This is because the Rule 11 agreement between the City and Garcia specified that (1) Garcia would deliver an executed Agreed Interlocutory Judgment to the City by September 8, 2010, and (2) the City's lawyer would then execute the Agreed Interlocutory Judgment and file it with the court by September 9, 2010. The City asserts that "it does not appear" that the Agreed Interlocutory Judgment was delivered to the City in the "specified time frame," i.e., by September 8, 2010, because:

> The fax legend at the top shows the date of September 10, 2010, which is two days later than the required September 8 acceptance date. (It is unclear who was the sender and who was the recipient, so it is unknown if this was the delivery of the acceptance or some other fax transmission of the executed document.) The file stamp on the upper right hand corner shows that the Agreed Interlocutory Judgment was filed with the court on September 13, 2010, which is four days after the specified September 9 filing date required by the offer. (It cannot be said that [the City] waived its right to strict compliance by accepting and filing the untimely-executed Agreed Interlocutory Judgment, because there is no showing of who filed it with the court.).

We disagree with the City that the record establishes that no binding settlement was reached between Garcia and the City.

First, the City's speculation that Garcia's delivery of the executed Agreed Interlocutory Judgment "may" have been late under the terms of the Rule 11 agreement based on a facsimile legend that the City admits may have been untimely acceptance *or* simply "some other fax transmission of the executed document" does nothing to disprove the timely delivery of the agreed judgment. Similarly, we reject the City's argument that the untimely filed Agreed Judgment cannot show the City acquiesced in any late delivery because "there is no showing of who filed it with the court." The City specified in the Rule 11 that Garcia was required to sign the Agreed Interlocutory Judgment *first*, and then the City's attorney would sign it and file it with the court. In other words, the only evidence in the record reflects that it was the City, rather that Garcia, that had the obligation to timely file the Agreed Interlocutory Judgment.

More fatal to the City's argument, though, is that timely delivery of the Agreed Interlocutory Judgment was one of several obligations created by the Rule 11 agreement, not a condition of the Rule 11 agreement's acceptance or effectiveness. The Rule 11 agreement obligates the parties to do several things by certain dates, including the executing and filing the Agreement Judgment, executing a formal settlement agreement, and executing documents to transfer title

26

to Garcia's property from Garcia to the City. The Rule 11 agreement itself, though, does not contain a deadline for acceptance, and the City has not argued that the Rule 11 agreement was not timely accepted or filed. The City's allegations about Garcia's allegedly untimely delivery of the agreed judgment go to whether Garcia breached the Rule 11 agreement, not to whether the agreement was binding in the first instance.

The Rule 11 agreement—executed and on file with the court—expressly releases all prior claims, excepting only claims related to performance under the Rule 11:

> [T]his Letter Agreement constitutes a release by each Party of all claims and causes of action that each Party has asserted or could have asserted against the other Party in the Litigation, save and except only those obligations created by or resulting from this Letter Agreement, which obligations, in any event, continue until discharged or modified by a subsequent, mutual agreement of the Parties.

Given the terms of the parties' Rule 11 agreement releasing all the City's claims against Garcia, the trial court erred by reviving these claims and entering judgment on them against Garcia in the corrected judgment based on the City's later representation that Garcia had "failed or refused to complete the settlement process."

### 3. Grayshaw

With regard to the Rule 11 agreement entered between the City and Grayshaw, the City argues that "Grayshaw did not reach a meeting of the minds

27

with [the City] and did not form a binding contract." This Rule 11 agreement is identical to the one that the City entered with Garcia, but each instance of Garcia's typewritten name within the agreement is manually crossed out and replaced with Grayshaw's handwritten name, and the date for Grayshaw to return the Agreed Interlocutory Judgment is likewise changed. The City asks us to (1) compare the signatures on Grayshaw letter with the Garcia letter, (2) conclude the signatures are identical (except for size), (3) take this as evidence that the City's counsel signed the letter first before the handwritten changes and, finally, (4) hold that because the name "modifications were not acknowledged by the subsequent signature of [the City's] counsel," the Rule 11 agreement "does not reflect a meeting of the minds and is not a binding settlement agreement."

The Rule 11 agreement on file with the court is signed by both the attorney for the City and Grayson. The body of the Rule 11 agreement provides that, once Grayson signs it and returns it to the City attorney, the City attorney will file it. On the same day that this executed Rule 11 agreement containing the handwritten alternations changing the name from Garcia to Grayshaw was filed with the court, a wholly typewritten Agreed Interlocutory Judgment was filed with the court (containing Grayshaw's name throughout) and the document does not contain any handwritten alterations. That agreed judgment, which states that it is pursuant to

the parties' settlement, is signed by the City Attorney under the notation "AGREED AND ENTRY REQUESTED."

Given that the Grayshaw Rule 11 agreement containing the handwritten changes was filed with the trial court with signatures by both parties, and that the City then executed and filed an agreed judgment pursuant to that agreement, the City's argument that it did not have a meeting of the minds with Grayshaw as to the Rule 11 agreement (based solely upon speculation when the handwritten alterations to the name were made) is unpersuasive.

The City also argues that the executed Agreed Interlocutory Judgment provided for in the Rule 11 agreement was filed with the court six days after the date provided in the Rule 11 agreement. Thus, it contends, the filing was not "in strict compliance" with the agreement, meaning that "there was no enforceable Rule 11 Agreement." We have already rejected this argument as it relates to Garcia's Rule 11 agreement because (1) timely filing of the agreed judgment under the Rule 11 agreement was not a condition of the agreement's acceptance, and (2) timely filing of the agreed judgment was the City's obligation. We reject the City's argument that the late filing of the agreed judgment invalidated its settlement agreement with Grayshaw for the same reasons.

We sustain Garcia and Grayson's fourth issue.

29

## DEMOLITION COSTS AND ATTORNEYS' FEES

In his third issue, Whallon argues that the trial court erred "in awarding [the City] attorneys['] fees and expenses in the total amount of $494,751.00, as apportioned against defendants/appellants in the amounts set forth in the corrected final judgment." In his fourth issue, he argues that the trial court erred "in awarding $455,000.00 in demolition costs, as apportioned against defendants/appellants in the amounts set forth in the corrected final judgment."[2]

Whallon argues that the trial court's attorneys' fees award was improper for the following reasons:

(1)     "the proceeding in District Court was totally unnecessary, inasmuch as the first proceeding (before the Building and Standards Commission) disposed of all matters and issues presented or which could have been presented to that tribunal";

(2)     "administrative expenses, including the value of legal work, could have been procured in the Commission's Administrative proceeding";

(3)     "the only attorneys fees which were sought began after entry of the Commission's final orders, and continued through entry of the Corrected Final Judgment";

(4)     there are no pleadings or statutory bases supporting an the award;

(5)     "the attorneys fees were not segregated";

---

[2]     Whallon's brief combined these two issues into one argument section. That section, however, only contains arguments related to attorneys' fees, not demolition costs.

(6)    "no credit was applied for amounts received in excess of the settling defendant's fractional percentage interest on the total award"; and

(7)    "the amount and method of apportioning attorneys fees is factually flawed, and its use and implementation constitutes err by the trial court."

We considered, and rejected, these first three contentions in addressing Whallon's first issue, i.e., that res judicata barred the City's civil lawsuit. We thus confine our analysis here to the remaining arguments not previously addressed.

## A. Pleadings

Whallon acknowledges that the City requested attorneys' fees in the prayer of its petition, but notes that references to attorneys' fees is "otherwise omitted from its live pleading at trial," and that the City pleaded "no statutory basis for the award." The City contends that its pleadings were sufficient.

"To be entitled to an award of attorney's fees, a party must file an affirmative pleading requesting them." *Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 880 (Tex. App.—Eastland 2002, pet. denied). "[I]f a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover [attorney's fees] under it." *Gibson v. Cuellar*, 440 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). When the opposing party fails to specially except to a pleaded

request for attorneys' fees, the pleading requesting fees will be construed liberally in favor of the pleader. *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).

In the body of its petition, the City cited Chapter 54 of the Local Government Code as the authority for its seeking "to enforce Chapter 10 of the City's Code of Ordinances, . . . which was enacted pursuant to Chapters 54 and 214 of the Local Government Code." In the prayer, the City requested that the City have judgment:

  a.  Against all parties authorizing the City to demolish and remove the buildings and structures comprising the Complex;

  b.  Against the Owners for the costs, to be apportioned to each Owner, associated with demolishing and removing the buildings and structures that comprise the Complex together with interest thereon at the highest rate allowed at law or equity until paid;

  c.  Against the Owners for liens, in an amount to be apportioned to each Owner, against the property upon which the Complex is located in an amount equal to the costs associated with demolishing and removing the buildings and structures that comprise the Complex together with interest thereon at the highest rate allowed by law or in equity until paid;

  d.  *Against the Owners for attorney's fees as authorized by law*; and

  e.  All other relief in law and in equity to which the City of Houston is entitled.

(emphasis added). Whallon did not specially except to the City' pleadings.

So long as Chapter 54 or Chapter 214 authorizes attorneys' fees, we hold that the City's pleadings supports an award of attorneys' fees because its petition

puts Whallon on notice about the relief sought, and contains facts which, if true, entitle him to the relief sought. *Mitchell*, 60 S.W.3d at 130.

### B. Statutory Authority

The trial court made a conclusion of law that the "City is entitled to recover attorneys' fees from the Owners pursuant to Chapters 54 and 214 of the Texas Local Government Code, including Sections 54.039(h), 214.0012(h) and 214.0015(h)." Whallon contends that none of these sections authorize an award of attorneys' fees.

"Under Texas law, a court may award attorney's fees only when authorized by statute or by the parties' contract." *Peterson Group, Inc. v. PLRQ Lotus Group, L.P.*, 417 S.W.3d 46, 59 (Tex. App.—Houston [1st Dist.] 2013, pet. filed); (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009)). "Whether a party is entitled to seek an award of attorney's fees is a question of law that we review de novo." *Id.* (citing *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)).

### 1. Sections 54.039(h) and 214.0012(h)

We agree with Whallon that, by their plain language, sections 54.039(h) and 214.0012(h) do not support the trial court's attorneys' fee award here. These sections provide for a municipality to recover its attorneys' fees if—on an appeal

to the district court from a decision by a commission panel or municipality—the district court wholly or substantially affirms the decision:

> If [on appeal to the district court], the decision of the commission panel is affirmed or not substantially reversed but only modified, the district court shall allow the municipality all attorney's fees. . . .

TEX. LOCAL GOV'T CODE § 54.039(h).

> If [on appeal to the district court], the decision of the municipality is affirmed or not substantially reversed but only modified, the district court shall allow the municipality all attorney's fees. . . .

TEX. LOCAL GOV'T CODE § 214.0012(h).

The City's suit here does not seek appellate review of an order by the commission panel or a municipality. The City does not appear to disagree with appellants, as it does not argue in its brief here that either of these sections cited by the district court support the trial court's award of attorneys' fees.

**2. Section 214.0015(h)**

The other section cited by the trial court, and the only one relied upon by City in its brief, is section 214.0015(h) of the Texas Local Government Code, which states:

> In any judicial proceeding regarding enforcement of municipal rights under this section, the prevailing party is entitled to recover reasonable attorney's fees from the nonprevailing party.

TEX. LOCAL GOV'T CODE § 214.0015(h).

Whallon argues that "'this section' as that term is referred to in subsection (h) concerns only administrative decisions and the process for an owner(s) appeal

34

of an unfavorable commission decision to the district court." According to Whallon, because "no appeal was taken from the Commission's decision, . . . Section 214.0015(h) does not apply."

We disagree with Whallon that the "judicial proceeding[s]" referred to in section 214.0015(h) is limited to appeals of unfavorable commission decisions to the district court.

Section 214.001 of the Local Government Code authorizes the City to, by ordinance, "require the . . . demolition of a building that is: (1) dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety and welfare." The City exercised such right through the enactment of Houston City Ordinance 10-370, providing that,

> If the persons having an interest in the property fail to comply with the order of the hearing official within the time specified in the order for compliance, the neighborhood protection official shall cause the building to be vacated, repaired, secured, and/or demolished pursuant to the order.

> The City's district court petition states:

> This is an action by the City against the owners and lien holders of units in the Complex to enforce Chapter 10 of the City's Code of Ordinances (entitled "Comprehensive Urban Rehabilitation and Building Minimum Standards") ("Chapter 10"), which was enacted pursuant to Chapters 54 and 214 of the Local Government Code.
> . . . .
> The state of disrepair and the Owners' failure to comply with City Ordinances, including, without limitation, certain provisions of Chapter 10 and the Orders compelling the Complex to be secured has resulted in a situation dangerous to the community. Given the

35

advanced state of disrepair and the danger to the community, repair is not feasible and the Complex should be demolished.

Section 214.0015 provides, "This section applies only to a municipality that has adopted an ordinance under Section 214.001" of the Local Government Code. TEX. LOC. GOV'T CODE § 214.0015(a) (Vernon 2008). In addition to exercising the authority granted by section 214.001, section 214.0015 grants additional authority to a municipality to repair a building at the expense of the municipality and to assess the expenses on the land on which the building stands, or to assess a civil penalty against the property owner "for failure to repair, remove, or demolish the building and to provide for that assessment, the mode and manner of giving notice, and the means of recovering the assessment" to bring the building up to code standards; and to impose a lien upon the land. *Id.* § 214.0015(b)–(c). Subsection (h) provides that, "[i]n any judicial proceeding regarding enforcement of municipal rights under this section, the prevailing party is entitled to recover reasonable attorney's fees from the non-prevailing party."

We agree with the district court that the underlying suit here is a "judicial proceeding regarding enforcement of [these] municipal rights" TEX. LOCAL GOV'T CODE § 214.0015(h). Accordingly, the City, "as the prevailing party[,] is entitled to recover reasonable attorney's fees" under section 214.0015(h).

36

## C.     The Amount of Attorneys' Fees Awarded

Finally, Whallon argues that the amount of attorneys' fees awarded was improper. The City's expert, Joel Mohrman, testified from the City's outside counsel's itemized invoices. These invoices totaled $607,504.77, which Mohrman testified were reasonable and necessary attorneys' fees. The trial court found that the City had "incurred reasonable and necessary legal fees in the amount of $494,751.00." In its conclusions of law, the trial court stated that the "amount of judgment for each Owner is determined by the fractional ownership interest of each unit owned by the Complex multiplied by the total fees incurred."

Whallon argues that the fees expended should have instead been segregated by each property owner and then a credit applied for amounts received from individual defendants in excess of the defendant's fractional percentage.

A similar argument was made in *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604 (Tex. App.—Fort Worth 2006, pet. denied). In that case, the plaintiffs originally sued ten defendants involved in the construction of a home. *Honaker*, 192 S.W.3d at 611. Eight of the defendants settled, and the plaintiffs proceeded to trial against the remaining two. *Id*. at 611–12. Following the trial court's judgment awarding to the plaintiffs actual damages and 80% of the total attorneys' fees, the defendants argued on appeal that the "trial court erred by awarding attorney's fees because the Honakers failed to allocate the amount of

attorney's fees incurred with respect to each of the ten original defendants." *Id.* at 621.

The court of appeals began by announcing the general rule that:

When a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have made settlements, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible.

*Id.* at 622 (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991)); *Hartmann v. Solbrig*, 12 S.W.3d 587, 594 (Tex. App.—San Antonio 2000, pet. denied). The court noted that "[s]egregation is not required, however, if the claims arise out of the same transaction and are so interrelated that their prosecution or defense requires proof or denial of essentially the same facts." *Id.* (citing *Sterling*, 822 S.W.2d at 11; *Hartmann*, 12 S.W.3d at 594).

When asked if he could apportion the attorneys' fees among the defendants, the attorney in *Honaker* testified that "there is a lot of duplication of work, whether it is one defendant or multiple defendants, I believe that at least 80 to 85 plus percent of the work would be the same whether or not it was just your clients or whether there were these other defendants as well." *Id.* The court held that this uncontroverted testimony supported the trial court's award of unsegregated attorneys' fees. *Id.*

There was similar testimony here. On cross-examination, Mr. Mohrman testified that he had not segregated fees per defendant because it was not feasible and the fees were too intertwined:

> Q. Sir, of the 607,504.77 amount, have you in any way identified what charges were specifically about Andrew Whallon?
>
> A. We have not divided them up by defendant . . .
>
> [W]e're seeking liability individually based upon their percentage ownership in the condominium. Same with the attorney's fees and all costs.
>
> Q. But you're also asking him to pay, potentially, costs that – I mean a portion of costs that may not be representative of what costs were actually incurred in relation to him; is that correct?
>
> A. I would disagree.
>
> . . . .
>
> Q. Well, I understand, but in collecting that potential liability, if you just did it on a percentage, it may suck up attorney's fees that were incurred in service on somebody or default judgments on somebody and that kind of thing, isn't that true?
>
> A. No, because I think the work that we did was inextricably intertwined. I don't think you can factor those things out and look at it on a defendant-by-defendant basis. There's one set of facts and circumstances here, one cause of action alleged against everyone . . . .

This uncontroverted evidence supports the trial court's proportional attorneys' fee award.

Having rejected Whallon's argument that the trial court's attorneys' fees award was erroneous, we overrule his third issue.

Because Whallon presents no argument in support of his fourth issue that the award of demolition costs was erroneous, we also overrule his fourth issue.

**EXPERT WITNESSES**

In his second issue, Whallon argues that "the trial court erred in refusing to strike [the City's] untimely designated experts, their documents and their related findings." During the course of trial, Whallon withdrew objections to all experts except Dokell (demolition costs) and Mohrman (attorneys' fees), so we confine our discussion to these two experts.

In a Level 2 discovery case, the discovery period ends on the earlier of "30 days before the date set for trial," or "nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery." TEX. R. CIV. P. 190.3(b)(1)(A),(B). The first discovery responses in this case were due on February 26, 2009, which started the clock on the nine-month period ending November 30, 2009. The City was required to designate testifying experts by 90 days before that November 30, 2009 date, i.e., by September 1, 2009. TEX. R. CIV. PROC. 195.2(a) ("Unless otherwise ordered by the court, a party must designate experts—that is, furnish information requested under Rule 194.2(f)[3]—by the later

---

[3]  (1) the expert's name, address, and telephone number;

(2) the subject matter on which the expert will testify;

(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed

of the following two dates: 30 days after the request [for disclosures] is served, or—(a) with regard to all experts testifying for a party seeking affirmative relief, 90 days before the end of the discovery period."). Supplemental discovery related to a testifying expert should be made "reasonably promptly after the party discovers the necessity for such a response." TEX. R. CIV. PROC. 193.5(b); 195.6. There is a presumption that supplementation less than 30 days before trial is not made "reasonably promptly." TEX. RULE CIV. P. 193.5(b).

In its March 4, 2009 disclosures to Whallon, the City stated that experts had not been retained, and that disclosures would be amended if they were. On May 15, 2009, the City filed Plaintiffs' Designation of Expert Witnesses, which included the following designations related to demolition costs and attorneys' fees:

- Mr. Dokell with Cherry Demolition to testify "as to the reasonable cost to demolish the Candlelight Trails Complex." The designation noted that Dokell had not prepared a report; and

- two attorneys, including Mr. Mohrman, to "testify as to the reasonableness, necessity of and amount of attorneys fees"

---

by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B) the expert's current resume and bibliography

TEX. R. CIV. P. 194.2(f)

On August 6, 2010—35 days before trial—the City supplemented its discovery responses with Mr. Dokell's curriculum vitae and with a $455,000.00 estimate, dated October 12, 2009, for demolishing the complex prepared by Mr. Dokell. The City did not supplement with attorneys' fees information at that time.

According to the City, none of the defendants ever complained about the alleged inadequacy of these designations and none of the defendants sought to depose any of the experts. In August 2009, Whallon's counsel withdrew from representation. On September 7, 2010—three days before trial—Whallon's current counsel made an appearance and moved to strike the City's experts, arguing that the City did not timely provide expert designations or supplementation.[4]

At trial, Mr. Mohrman, the City's outside counsel, testified that his firm communicated to all parties' counsel that relevant documents were available for inspection at his office. Only two lawyers took them up on that offer, Mr. Maida (the attorney ad litem representing certain property owners who could not be located), and one lawyer representing another defendant who was negotiating a settlement. Mohrman testified that he could not remember whether specific attorneys' fees billing records had been requested, but that all exhibits had been

---

[4] Whallon's counsel acknowledged in that filing that, given her recent appearance in the case, she "is unfamiliar with the history of discovery in this case" and that it appears from the file that "all parties were somewhat lax in forwarding copies of discovery requests and answers."

available for inspection, and that his office had provided access and copies of anything requested.

The trial court denied Whallon's request to strike Dokell's and Mohrman's testimony for failure to provide supplementation as to the substance of their opinions and supporting documents. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). We will not conclude that a trial court abused its discretion in admitting evidence that was not provided in timely supplementation if the proponent of the evidence establishes either that there is good cause for the failure to timely supplement or that the delay will not unfairly surprise or unfairly prejudice the other parties. TEX. R. CIV. P. 193.6(a)–(b).

With regard to Dokell's testimony estimating demolition costs, the record demonstrates that Dokell was timely disclosed as an expert who would testify as to demolition costs and that his demolition estimate (1) was available to Whallon's prior counsel for inspection at the City's outside counsel's office, and (2) was faxed to Whallon's prior counsel 35 days before trial. The trial court was within its discretion to refuse to exclude Dokell's testimony.

As for Mohrman's attorneys' fees testimony, the record demonstrates that Mohrman was timely disclosed as an expert who would testify as to attorney's fees, and that Whallon's prior counsel was informed that he could inspect the records there. Whallon's counsel did not inspect the records at the City's counsel's office, nor did he request that the court compel their production. To the extent that the City was obligated to supplement discovery disclosures with billing records and estimates of attorneys' fees incurred,[5] we conclude that the trial court was within its discretion to refuse to exclude Mohrman's testimony.

We overrule Whallon's second issue.

## CHALLENGES TO FINDINGS OF FACT AND CONCLUSIONS OF LAW

In Whallon's fifth issue, he argues:

The Trial Court erred in entering any all of its Findings of Fact and Conclusions of Law because: (1) the Court lacked jurisdiction over the proceeding (See Issue One); (2) the Trial court committed errors of fact or law which it then applied or recited as a basis, in whole or part to these FOF/COL and ultimately to its Corrected Final Judgment; (3) after removing the wrongfully admitted evidence, there remained no legally sufficient evidence to support the specified FOF/COL; (4) if there remained insufficient evidence to support the particular Finding and Conclusions where noted.

---

[5] *Goldman v. Olmstead*, 414 S.W.3d 346, 365 (Tex. App.—Dallas 2013, pet. denied) (disclosure providing only names of attorney that would testify as to amount and reasonableness of attorneys' fees was sufficient to comply with rules, absent motion to compel); *see also Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 660–61 (Tex. App.—Dallas 2012, no pet.) ("[T]he calculation of the amount of attorney's fees incurred by appellees is not an economic damage that is required to be disclosed in response to a request for disclosure.").

The City argues that Whallon's fifth issue—which contains "at least seventeen subparts" and few cites to authority or the record—is inadequately briefed and multifarious. We will endeavor to address any fairly presented argument not previously addressed in our opinion.

**A. Standard of Review**

Findings of fact entered in a case tried to a court are of the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997) (en banc), *pet. denied*, 977 S.W.2d 562 (Tex. 1998) (per curiam). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina*, 881 S.W.2d at 297. We indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could

not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Unchallenged findings of fact are binding on the parties and the appellate court. *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 658 (Tex. App.—Dallas 1993, writ denied); *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (holding that court of appeals generally cannot reverse for reason that is not assigned as error on appeal); *see also* TEX. R. APP. P. 38.1(e).

We review the trial court's conclusions of law de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support a correct legal theory. *Sears, Roebuck and Co. v. Nichols*, 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

## B. Proof of Ownership

Whallon challenges the trial court's findings of fact and conclusions of law that set forth that the defendants are owners or lienholders of property at

46

Candlelight Trails in the percentage stated in two exhibits: Exhibit 1 to the Plaintiffs' petition and Plaintiffs' Exhibit 65 introduced at trial. Whallon concedes in his brief that he is "one or the other," but argues that the City did not introduce evidence specifically establishing that he was a property owner at Candlelight Trails rather than a lien holder. He acknowledges that the City's Exhibit No. 65, i.e., a chart entitled "Fractional Ownership Per Unit (from Condo Declarations)," indicates that he is an owner, not a lienholder, and that this is some evidence of his ownership. But because the "creator of Ex. 65 was never identified" and because there was no "testimony explaining the source(s) of the chart's numbers, or other information," Whallon asks us to hold that the chart should have been excluded, or its admission limited to "for demonstrative purposes only."[6]

Contrary to Whallon's assertion that the record is silent as to the source of the information contained in Exhibit 65, Mr. Mohrman testified that the information in Exhibit No. 65 setting forth ownership information was pulled from the condominium declarations that were admitted into evidence without objection. In addition, the record reflects that, while the ad litem objected to admission of Exhibit No. 65, Whallon's counsel did not object to its admission. Whallon failed to preserve any complaint about admission of this evidence on appeal. *E.g., Austin*

---

[6] Whallon contends that the City's counsel conceded that his intent was to offer the chart as only a demonstrative exhibit. The record reflects, however, that the City's counsel actually made that comment with regard to a different exhibit.

*v. Weems*, 337 S.W.3d 415, 421 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (objection waived by failure to timely lodge objection in the trial court, and by failing to object when the same or similar evidence is introduced). Exhibit 65, as well as the condominium declarations, is some evidence of Whallon's status as an owner, rather than lienholder, of Candlelight Trails. *See Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 885 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (evidence entered without a limiting instructed admitted for all purposes).

### C. Findings Related to Hearing Before the Commission

Whallon challenges several of the trial court's findings of fact and conclusions of law related to the proceedings before the Building and Standards Commission. Specifically, he contends that the City did not give notice to all members of the complex about the commission hearing. He also asserts that the City's efforts to secure the property before and after the commission proceedings were ineffective. These arguments present nothing for our review, as Whallon did not take an appeal to the district court from the commission proceedings, and Whallon does not connect his complaints here about notice and ineffectual efforts to secure the property to any requested relief here.

**D.     Findings Related to the City's Demolition Costs**

Whallon next challenges the trial court's finding that the cost to the City to demolish the complex will be $455,000.00. The City's expert, Dokell, testified at trial that he estimated the cost to demolish to be $455,000.00.

Whallon contends, however, that the trial court erred in sustaining objections to his attempt to introduce evidence about potential grants to cover a portion of the costs, which would have proven that *the City* would not incur the expense of demolition. This evidence Whallon attempted to introduce was in the form of printouts from the City's website discussing potential grants for demolition of this property. These exhibits drew hearsay and authenticity objections, which were sustained, and those rulings have not been specifically challenged here. Next, Whallon sought to subpoena a member of the Houston City Counsel to prove up the exhibits. The trial court denied that request. Whallon's counsel then called one of the City's attorneys as a witness, but that witness did not have personal knowledge about any potential grants or the ability to authenticate the website printouts. Whallon has not established that the trial court's exclusion of this grant evidence was error. *Bay Area Healthcare Grp., Ltd.*, 239 S.W.3d at 234 (evidentiary rulings reviewed for abuse of discretion).

Whallon also argues that the $455,000.00 estimate of demolition costs was "not accurate" because, on cross examination, Dokell testified that he might be

willing to give the City a discount of between 1% and 10% if his company were awarded the work. Thus, Whallon contends, the City stood to make a profit on the demolition, which is improper.

Whallon's arguments do not establish that the trial court's finding that the City's demolition costs would be $455,000.00 was not supported by sufficient evidence. While Dokell testified that the City might obtain a slight discount, he also testified that that his budget did not take into account contingencies that could make the demolition costs higher, such as the potential need for asbestos abatement. The trial court was the finder of fact, and the trial court's finding of $455,000.00 in demolition costs was within the range supported by the evidence. *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("[T]he fact-finder has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation.").

### E.    Findings Related to Attorneys' Fees

Finally, Whallon argues that there is no evidence to support the trial court's finding that the City incurred reasonable and necessary attorneys' fees of $494,751.00. At trial, Mohrman testified that the City incurred reasonable and necessary attorneys' fees of $607,504.77. When moving for entry of judgment, however, the City requested that judgment be entered on only $494,751.00 in fees.

50

Whallon argues that "it is impossible to determine if the newly disclosed amount of $494,751.00 in fees was reasonable or were necessarily incurred."

The uncontroverted testimony supporting reasonable and necessary fees of $607,504.77 is evidence supporting the trial court's finding that $494,751.00 in fees is reasonable and necessary.

We overrule Whallon's fifth issue.

## CONCLUSION

We reverse the trial court's judgment against Garcia and Grayshaw and render judgment that the City take nothing on its claims against Garcia and Grayshaw. We affirm the trial court's judgment against Whallon.

Appellant's Renewed Request for Oral Argument or, Alternatively, for a Postponement of the Submission of Case on Appeal is denied. Appellants' Motion to Return the Clerk's Record and Order the Filing of a New Record in Proper Form, and for an Extension in Appellants' Briefing Deadline is denied. Appellants' Motion for Extension of Time to File Appellants' Motion for En Banc Reconsideration of its Motion for Leave to File Amended Briefs and Appellant's Supplement to Appellants' Motion for Extension of Time to File Appellants'

51

Motion for En Banc Reconsideration of its Motion for Leave to File Amended Briefs are both dismissed as moot.[7]

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

---

[7] The en banc court ruled today on Appellants' Motion for En Banc Reconsideration of its Motion for Leave to File Amended Briefs by separate order.