

# NUMBER 13-17-00234-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

| | |
|---|---|
| HARKER HEIGHTS CONDOMINIUMS, LLC, | Appellant, |
| **v.** | |
| CITY OF HARKER HEIGHTS, TEXAS, | Appellee. |

---

### On appeal from the 146th District Court of Bell County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Dorsey[1]**
**Memorandum Opinion by Justice Dorsey**

---

[1] Retired Thirteenth Court of Appeals Justice J. Bonner Dorsey, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

Appellant Harker Heights Condominiums (HHC) sought an injunction and temporary restraining order against appellee, the City of Harker Heights (City), to prevent the City from demolishing HHC's property. The City filed a plea to the jurisdiction, and the trial court granted the City's plea. By two issues, HHC asserts that the trial court's order granting the City's plea was improper because: (1) HHC timely filed suit against the City, and (2) the City violated the Texas Open Meetings Act. We affirm.

## I. BACKGROUND [2]

HHC owns over four acres of property on Lynn Drive within the city limits of Harker Heights. This property contains approximately thirty-three condominium units that are leased to low income residents in need of housing. In February 2012, the City inspected the property and found defects and conditions that need repair to bring the property into compliance with the City's building ordinances. The City provided HHC with an inspection report to that effect. Subsequently, HHC began to remodel the structures.

After the City completed a walk-through inspection on March 5, according to HHC's original petition, the parties agreed that HHC would repair two units per month over the course of an eighteen-month period using a contractor registered with the City. On March 22, HHC received a copy of the City's March 5 field notes. On May 1, HHC delivered to the City its plan to address the City's concerns and began some of the repairs. On June 1, HHC informed the City that it was preparing a summary of bids from different plumbing and electric contractors, but on June 21, the City notified HHC that it would not give HHC

---

[2] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See id*. § 73.001 (West, Westlaw through 2017 1st C.S.).

any more time to complete the repairs. Two weeks later, HHC applied for permits to begin repairs on three units, which the City granted.

In August, the City placed a notice of a public hearing scheduled for August 29 to discuss the dangerous or substandard conditions at the property. At the hearing, which HHC attended, the City's Building Standards Commission (Commission) found the defects and conditions of the property substandard and a danger to the life, health, property, and safety of the public. By two orders, the Commission required that HHC repair, demolish, or remove certain units within sixty days and other units within ninety days. The orders also provided that if HHC failed to complete the work within the required time, the City would "demolish the buildings without further notice and charge all expenses incurred by the City to the owner." On September 4, the City informed HHC that it wanted a structural plan of action prepared by an engineer. The City served HHC with the Commission's orders on September 15, 2012.

On September 25, HHC found an engineer to prepare the plan. On November 9, 2012, the City granted HHC two more permit applications. On November 14, the City disconnected electricity from the property. On November 30, 2012, HHC finalized the engineering report requested by the City. On December 4, the City notified HHC that these two units had passed electrical inspection and cleared HHC to begin installing sheet rock in these units. On December 17, 2012, the City issued a certificate of occupancy on one of the units. In other words, HHC complied with the Commission's order for that particular unit because it was ready for habitation.

On December 18, 2012, the City Council awarded a demolition contract to a demolition company in accordance with the Commission's August 29 orders. On

3

December 21, HHC negotiated with the City to postpone demolition until new plans could be reviewed, but the City denied this request. On December 26, 2012, the City provided HHC with feedback regarding the November 30 engineering report.

HHC filed an "Application and Affidavit for Temporary Restraining Order and Temporary Injunction" on January 10, 2013. Specifically, HHC sought to temporarily enjoin the City from demolishing the property. In response, the City filed a plea to the jurisdiction asserting HHC's "Application and Affidavit for Temporary Restraining Order and Temporary Injunction" was untimely because it was filed some eighty days after the Commission's orders were issued. *See* TEX. LOC. GOV'T CODE ANN. § 54.039 (West, Westlaw through 2017 1st C.S.) (requiring a person aggrieved by an order of a building and standards commission's panel to file a verified petition in district court within thirty calendar days after receiving said order; otherwise, said order becomes final). On January 16, 2013, the district court granted the injunction and issued a temporary restraining order to enjoin the City from demolishing the property. The parties filed a Rule 11 Agreement in which the City would "cease and desist from directly or indirectly demolishing any of HHC's properties . . ." and that prior to any reinstatement of their demolition order, the City would give HHC seven days' notice.

Three years later, HHC amended its petition to include a violation of the Texas Open Meetings Act and argued that the actions taken by the Commission on August 29, 2012 were void. The City filed its second plea to the jurisdiction on October 27, 2016, which the trial court heard on February 24, 2017.[3] One month later, the trial court granted the City's second plea to the jurisdiction. This appeal followed.

---

[3] The City did not call any witnesses to the hearing. To support its plea to the jurisdiction, it attached exhibits to its plea to the jurisdiction for the trial court to consider.

## II.     PLEA TO THE JURISDICTION

By its first issue, HHC asserts that the trial court erred in granting the City's plea to the jurisdiction.  The City argues that, because HHC failed to appeal the Commission's orders within the statutory thirty-day period, the trial court has no jurisdiction over the Commission's orders.  HHC concedes that "[w]hile it is true that HHC did not file its section 214.0012 appeal within thirty days of being notified of the August 29, 2012 orders of the [Commission], it is also true that HHC *did* file its section 214.0012 suit within [thirty] days of the [City Council's] December 18, 2012 order to proceed with demolition."  *See id*.  § 214.0012(a) (providing for judicial review of an order of a municipality).  The City relies on chapter 54 of the government code while HHC relies on chapter 214.

### A.     Standard of Review

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit."  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo.  *Id*.  While reviewing a plea to the jurisdiction, a court should limit itself to the jurisdictional issue at hand and avoid considering the merits of claims made by the plaintiff. *Bland*, 34 S.W.3d at 554.  "The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached."  *Id*.  When, as here, a plea challenges the existence of jurisdictional facts, in addition to the pleadings,

5

the court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). The reviewing court should confine itself to the evidence relevant to the jurisdictional issues raised. *Bland,* 34 S.W.3d at 555.

## B.     Applicable Law

"Texas law permits municipalities to establish commissions to consider violations of ordinances related to public safety." *City of Dallas v. Stewart*, 361 S.W.3d 562, 565 (Tex. 2012); *see* TEX. LOC. GOV'T CODE ANN. §§ 54.032–.041 (West, Westlaw through 2017 1st C.S.). "The governing body of the municipality may provide for the appointment of a building and standards commission to hear and determine cases concerning alleged violations of ordinances." TEX. LOC. GOV'T CODE ANN. § 54.033. The City of Harker Heights created its Commission for that purpose. *See* HARKER HEIGHTS, TEX., ORDINANCES ch. 33, § 33.80 (2011). The Commission evaluates alleged violations of municipal ordinances. *See id.* Before issuing a demolition order, the Commission is required to give property owners notice and a hearing. *See* TEX. LOC. GOV'T CODE ANN. § 54.035; HARKER HEIGHTS, TEX., ORDINANCES ch. 160, § 160.06(c) (2011).

A building and standards commission panel may:

(1) order the repair, within a fixed period, of buildings found to be in violation of an ordinance;

(2) declare a building substandard in accordance with the powers granted by this subchapter;

(3) order, in an appropriate case, the immediate removal of persons or property found on private property, enter on private property to secure the removal if it is determined that conditions exist on the property that constitute a violation of an ordinance, and order action to be taken as necessary to remedy, alleviate, or remove any substandard building found to exist;

6

(4) issue orders or directives to any peace officer of the state, including a sheriff or constable or the chief of police of the municipality, to enforce and carry out the lawful orders or directives of the commission panel;

(5) determine the amount and duration of the civil penalty the municipality may recover as provided by Section 54.017.

TEX. LOC. GOV'T CODE ANN. § 54.036. The local government code provides for judicial review of any decision of a building and standards commission panel, but the "district court's review shall be limited to a hearing under the substantial evidence rule." *City of Dallas*, 361 S.W.3d at 566; *see* TEX. LOC. GOV'T CODE ANN. §§ 54.039(f). To appeal an order of a building and standards commission, an aggrieved party must file a verified petition in district court within thirty days of the commission's order. TEX. LOC. GOV'T CODE ANN. § 54.039(a). If no appeals are taken from the decision of the commission panel within the required time period, the decision of the commission panel is final and binding. *Id*. § 54.041.

Section 214.0012 of the local government code, much like section 54.039, requires an aggrieved party by an order of a municipality issued under section 214.001 to file a petition in district court within thirty days. *Id*. § 214.0012. Section 214.001 authorizes a municipality to, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is substandard or unfit for human habitation. *Id*. § 214.001(a). Thus, a building and standards commission is a method through which a municipality may seek to enforce ordinances passed under the authority of chapter 214. *See Whallon v. City of Houston*, 462 S.W.3d 146, 156 (Tex. App.—Houston [1st Dist.] 2015, pet denied):

C.    **Discussion**

The City established its Commission pursuant to its authority under section 54.033 of the local government code to review ordinance violations. *See id*. § 54.033. Here, because HHC is challenging an order from the Commission rather than a municipal ordinance, section 54.039 is the applicable statute for a party seeking judicial review of those orders. *See id*. §§ 54.039(a), 214.0012(a) (West, Westlaw through 2017 1st C.S.).

On August 29, 2012, the Commission held a hearing regarding the dangerous or substandard conditions at HHC's property, which HHC attended. After hearing evidence presented by the City and HHC, the Commission issued two orders, signed on August 29, 2012, which provided in relevant part:

> Unit 201 B; Unit 211 C; Unit 211 D; Unit 301. . . are substandard and must be demolished, repaired, or removed within 60 days . . . UNITS 220; 230; 240; 300; 311; 320; 321; 331; 341; 350; 360; 361; 400; 401; 431; 441; 460; 451-461; 470; 471. . . are substandard and are to be demolished, repaired, or removed within 90 days. If the work to repair, demolish, or remove the buildings is not completed within the period of time referenced in the preceding paragraph, the City of Harker Heights may demolish the buildings without further notice and charge expenses incurred by the city to the owner. If the owner does not reimburse the city for its expenses, the city will place a lien upon the property for the amount owed . . . .

The City served these orders on HHC on September 15, 2012. Thus, HHC needed to repair, demolish, or remove four units within sixty days and the remaining units within ninety days to prevent demolition by the City. Yet, HHC did not comply with the orders. Because HHC did not comply with the orders, the City proceeded to enforce demolition "without further notice." Thus, the City Council awarded a contract to a demolition company on December 12, 2012.

According to HHC, the award of this contract represented "the city's latter decision to proceed with demolition" and was "a final decision that had been reached by the City." In other words, HHC argues their request for judicial review was within the thirty-day

deadline period pursuant to section 214.0012 of the local government code because the City Council's resolution was "the City's actual decision on the matter." *See id.* § 214.0012. However, because the challenged orders are decisions of the Commission rather than a municipal ordinance, here chapter 214 is inapplicable. *See id.* §§ 54.039(a) (providing for judicial review from a decision of a Commission panel), 214.0012(a) (providing for judicial review from an order of a municipality). Although HHC suggests that the City Council's contract award was an "order," the City Council did not determine whether the property was substandard, dangerous, or in violation of city ordinances. Rather, it is the Commission—as a quasi-judicial board—that makes such determinations. *See id.* § 54.036. The City Council merely awarded a contract to a demolition company in the form of a resolution; it did not issue an order declaring the properties substandard.

Moreover, HHC claims the Commission's orders were illegal because if enacted, "they would authorize the taking, damaging, or destruction of HHC's property without the City first paying HHC adequate compensation." However, HHC did not seek judicial review of the orders despite the alleged illegality of the orders. Instead on January 10, 2013, almost five months later, HHC filed "Application and Affidavit for Temporary Restraining Order and Temporary Injunction" in district court to temporarily enjoin the City from proceeding with the demolition process. The "Application and Affidavit for Temporary Restraining Order and Temporary Injunction" was nothing more than a request to enjoin the City from demolishing HHC's property and did not contest the "illegality" or seek judicial review of the Commission's orders as required by section 54.039.

9

Nonetheless, even if we assume that the "Application and Affidavit for Temporary Restraining Order and Temporary Injunction" was a petition for review of the Commission's orders rather than a suit for temporary injunctive relief, it was not timely filed. Because HHC did not seek judicial review of the Commission's final orders within thirty days and did not avail itself of the opportunity for district court review, the decision of the Commission became final and binding. *See id*. § 54.041; *City of Lubbock v. Corbin*, 942 S.W.2d 14, 23 (Tex. App.—Amarillo 1996, writ denied) (finding that "the Corbins were bound by the Housing Standards Commission order, and could not allege injury as a result of the commission's finding that their house was substandard" because "their failure to appeal resulted in a final order"). Therefore, the trial court had no jurisdiction to review the Commission's orders. Accordingly, we overrule HHC's first issue.

### III.  OPEN MEETINGS ACT

In its second issue HHC argues that as a matter of law, the City violated section 551.041 of Texas Open Meetings Act because the agenda for the August 29, 2012 meeting only notified the public that the Commission would discuss *one* manufactured residential structure and did not notify the public that the Commission would take action on over twenty residential structures. *See* TEX. GOV'T CODE ANN. § 551.041 (West, Westlaw through 2017 1st C.S.). In response, the City argues that the trial court lacks jurisdiction to entertain HHC's open meetings act claim because it serves as a collateral attack on the Commission's orders. We agree with the City.

Section 54.039 of the local government code expressly states that orders of a City's building and standard commission are final if not petitioned in district court for judicial review within thirty days. *See id.* § 54.039. HHC's failure to appeal as specified

10

by the statute resulted in a final order, and the trial court had no jurisdiction to review the merits of the orders. The orders were not subject to collateral attack. *See City of Dallas*, 361 S.W.3d at 580 ("A party cannot collaterally attack what she chooses not to challenge directly.")

Because HHC never invoked the jurisdiction of the trial court by requesting judicial review under the statute, HHC cannot now invoke the jurisdiction of the trial court by asserting an open meetings act violation to collaterally attack the Commission's binding orders. *See Patel v. City of Everman*, 361 S.W.3d 600, 601 (Tex. 2012) (per curiam) (holding that Patel was collaterally estopped from now suing because he failed to seek judicial review of a Commission's order within the thirty-day period). We overrule HHC's second issue.

## IV. CONCLUSION

We conclude the trial court correctly held it did not have jurisdiction. The judgment is AFFIRMED.

J. BONNER DORSEY,
Justice

Delivered and filed the
28th day of March, 2019.

11